[See Case No. 15,724.]

UNITED STATES (MARSH v.). See Case No. 9,120.

# Case No. 15,726.
## UNITED STATES v. MARSHALL.
[1 Cin. Law Bul. 36.]

Circuit Court, S. D. Ohio. 1876.

INTERNAL REVENUE — RECTIFIER — NOTICE AND BOND—PRESUMPTIONS—REASONABLE DOUBT.

1. A rectifier may recover from fruits and berries spirits which may exist in them by reason of their former use by rectifiers or compounders; and where charcoal has been used in the rectification or purification of spirits, he may recover from it the spirits remaining in it. He may also recover from such saloon washings as do not contain fermented substances.

2. If a person, who has given notice as a rectifier, by any process manufactures spirits from fruits or berries, from saloon washings containing fermented substances, or from sour beer, he becomes a distiller, and must give notice and bond as such, and, failing to do so, is liable to the penalties prescribed in the 3259th and 3260th sections of the United States Revised Statutes.

3. Such violation of the law, however, is not to be presumed, but must be proven; it may be established by circumstantial as well as by direct and positive proof.

4. Rules of evidence in criminal cases. Presumption of evidence. Character.

5. Reasonable doubt defined.

The indictment in this case contains three counts. The first charges the defendant [W. T. Marshall] with carrying on the business of a distiller without giving bond as required by section 3260 of the United States Revised Statutes. The second charges him with carrying on the business of a distiller without registering his still, as required by section 3258, Rev. St. U. S.

W. M. Bateman, U. S. Dist. Atty., and C. Richards and O. Dyer, Asst. U. S. Dist. Attys.

I. B. Wright, I. M. Simon, and O. J. Dodds, for defendant.

SWING, District Judge (charging jury). The charge against the defendant is that he is carrying on the business of a distiller without having given the notice or the bond required of distillers, and without registering his still. The evidence in the case shows that defendant had registered his still, and the government has therefore abandoned the third count in the indictment. Your attention will therefore be directed to the evidence under the first and second counts only. The defendant admits that he did not give notice or bond, as a distiller, but denies that he is carrying on the business of a distiller, and claims that he is carrying on the business of a rectifier. The government admits that the defendant gave notice of his intention to carry on the business of a rectifier, and does not contend that he has failed in any respect to comply with all the requirements of law in relation to rectifiers; but it is asserted that instead of carrying on the business of a rectifier, he was engaged in carrying on the business of a distiller. If he was carrying on the business of a rectifier there could be no verdict against him; but if under his notice as a rectifier he was in fact carrying on the business of a distiller, he would be guilty, as it is not claimed that he gave notice or bond as a distiller. So that the question for your determination is: Was he, in fact, carrying on the business of a distiller?

The law defines a distiller to be: "Every person who produces distilled spirits, or who brews and makes mash, wort, or wash, fit for distillation or for the production of spirits, or who, by any process of evaporation, separates alcoholic spirit from any fermented substance, or who, making or keeping mash, wort, or wash, has also in his possession or use a still, shall be regarded as a distiller." And the law defines a rectifier to be: "Every person who rectifies, purifies, or refines distilled spirits by any process other than by original and continuous distillation from mash, wort, or wash, through continuous closed vessels, until the manufacture thereof is complete, and every wholesale or retail liquor dealer who has in his possession any still or leech tub, or who keeps any other apparatus for the purpose of refining in any manner distilled spirits, and every person who, without rectifying, purifying, or refining distilled spirits, shall by mixing such spirits, wine or other liquor with any materials, manufacture any spurious imitation, or compound liquors for sale under the name of whiskey, brandy, gin, rum, wine, spirits, cordials, or wine bitters, or any other name, shall be regarded as a rectifier, and as engaged in the business of rectifying." The rectifier may rectify, purify or refine distilled spirits or wines by any process other than original and continuous process, etc. He may mix or compound any kind of spirits; he may transform it from one spirit to another, by the addition of any substance which may change its character or impart to it a different flavor or taste; he may manufacture out of the same spirits a dozen different kinds of liquors by the use of as many different substances. All this he may do, and it is for you to determine whether this was

the business he was engaged in, or whether he was in fact carrying on the business of a distiller. That is the simple question for your determination. As bearing upon this, however, there are other questions for your examination.

The notice given by the defendant is as follows:

"United States Internal Revenue. Notice by Rectifiers. Cincinnati, O., May 1, 1875. Notice is hereby given that W. T. Marshall, of the city of Cincinnati, county of Hamilton, and state of Ohio, intend under the name of W. T. Marshall, to carry on or engage in the business of rectifying, on and after May 1, 1875, in the building owned by Moses Swasey, situate No. 29 Sycamore street, Cincinnati, Ohio, which said building is situated more than six hundred feet in a direct line from any authorized distillery. The following process of rectification will be used: Re-distilling. The following utensils will be used in said business, viz.: Number and kind of still, and cubic contents of each: Two (2). One (1) copper still, capacity 200 gallons. One (1) wooden still, capacity 640 gallons. Number of leech and mixing tubs, and capacity of each: Three (3). Two (2) receiving tubs, capacity 800 gallons each. One (1) receiving tub, capacity 160 gallons. Kind of liquors proposed to be used in rectification: Highwines, cologne spirits, and saloon washings, other than those containing fermented liquors, and rectified charcoal, upon which the spirit tax has been paid. Kind of liquors proposed to be produced by such rectification: Gin, neutral spirits, brandy and whiskey. Whether engaged in the business of distilling, or wholesale and retail liquor dealing: Re-distilling for other parties; wholesale liquor dealer. Estimated quantity of spirits which can be rectified every twenty-four hours in the establishment: 26 barrels. Name of every person interested, or to be interested in the business, and nature of interest, with residence: W. T. Marshall, residence, Butler county, Ohio. (Signed) W. T. Marshall. To Lewis Weitzel, Collector, 1st District, O.

"Received this 1st day of May, A. D. 1875. Lewis Weitzel, Collector."

This notice shows that he estimated the quantity of spirits to be produced by him every twenty-four hours at 26 barrels. It also gives the name of the person interested and his residence. It also shows that he proposed to use two stills, and three tubs; that he proposed to use highwines, cologne spirits, and saloon washings which did not contain fermented liquors, also charcoal. Under this notice he had a right to use both still and the three tubs, the highwines, the cologne spirits, and saloon washings, if they did not contain fermented liquors, the charcoal, and all the machinery and implements described, and it is a matter to be taken into consideration that he proposed to produce neutral spirits, and to

re-distill for other parties, and it is claimed a large proportion was in fact re-distilled for others. He had no right to use any saloon washings which contained fermented liquors. He had no right to use any fermented liquors, whether contained in saloon washings or not. He had, however, the right to use highwines and cologne spirits, and he had a right to recover from any substance, no matter what, any spirits which existed in that substance, upon which tax had been paid. He had a right to take the charcoal used by rectifiers and recover, by any process, all the spirits which were in it. He had a right to take elderberries, peaches, prunes,—every article of that kind that contained spirits by reason of their former use by rectifiers, not out of which spirits might have been manufactured, but that contained those spirits in a spirit form; and he had a right to recover or separate it from the substance it had gone into and get it back free from any substance with which it was connected. But he had no right to create spirits—that is, he had no right to take prunes, and peaches, and elderberries, or beer, or any other fermented substances, and make spirits out of them. He had no right to put it through such a process as would convert the elements which existed in these several articles, and out of which by a process of distillation he could create spirits. He had a right to take all the saloon washings which he could find in the city of Cincinnati, if they contained no fermented liquors or substances, recover from these all the spirits that existed in them, separating it from the water or other substance with which it might he held in solution.

Now I think you understand from this presentation what he had a right to do, and what he had no right to do. The doing of one was entirely legitimate and within his license, and is a business authorized and protected by the law; the other is a business he had no right to engage in, and engaging in which he violated the law. If he was engaged in rectifying he had a perfect right to do so; but if, under that pretense, he was making spirits, he was violating the law; and whether he was doing so is for you to determine. I will not at length review the evidence in this case. In fact, I hardly conceive it the better plan for the judge to do so. It is, however, the duty of the judge to direct the attention of the jury to the claim of the parties as to what the evidence establishes, and in a general way direct their attention to the evidence bearing upon these respective claims. In this case, it is admitted that the defendant gave no notice or bond as a distiller; it is, therefore, only necessary for the government to establish the fact that the defendant was carrying on the business of a distiller, and this it must do beyond a reasonable doubt. It is competent for them to do this not only by direct and positive proof, but by circum-

stantial evidence, to bring before you all the facts and circumstances which tend to establish this proposition, and from them, as well as by direct and positive proof, establish its existence. Fraud is not to be presumed. As a man engaged in the commission of fraud is apt to attempt to cover it up and hide it, the law permits its existence to be established by circumstantial evidence, and where there are a number of facts and circumstances all tending and pointing to the commission of a fraud, the jury are authorized to infer its existence, but where it is to be established in this manner, the facts and circumstances must produce the same convincing effect upon the minds of the jury, as that required by direct and positive proof.

Your attention has been directed to the character and locality of the house, the condition of the cellar, etc. It is claimed on the one hand that the odors, which were inhaled by some of the officers and other parties about the establishment, indicated the existence of certain substances there; but on the other hand it is claimed that they have accounted for the existence of those odors by other facts shown by the evidence. From the evidence you must determine which is correct. Again, on the one hand it is contended that they have taken substances from certain vessels in the establishment, and submitted them to chemical tests, had them presented to gentlemen who were chemists, and they have determined their character. In their examination both these gentlemen testified that there are no chemical tests by which you can certainly determine the existence of certain substances, which, it is claimed by the government, do or did exist in the material used by the defendant. Both Professors Wayne and Fennell, learned chemists, say you can determine only by the smell and taste, whether the oil of hops existed in the substance used by the defendant; that there is no analysis to which it could be subjected that would determine that fact; and these two gentlemen entirely disagree in their testimony, one saying that the substance has both the smell and taste of hops, and the other that it has neither. Is it any wonder that jurors are sometimes troubled in arriving at conclusions from the evidence? I think this kind of evidence may be a little uncertain. For illustration, place two persons in a room where the gas may be escaping; one may detect it in a moment, the other may remain in the room for some length of time without being aware of the fact. Place them in a drug store, and one will detect the odor of certain perfumes or chemicals, and the other will not detect them, but will discover the presence of others.

I only present these illustrations for the purpose of showing you the necessity of a careful examination of the testimony. It is the duty of the jury to do so in all cases. The interests of both parties require that testimony of this character should be subjected to the severest scrutiny. By all the evidence in the cases, there were purchases by the defendant of articles which he had no right to use, to-wit, sour beer. It is not denied that purchases and shipments were made in his name, and it is claimed by the government that these in fact were used by him. On the other hand, it is claimed that they were taken to another establishment, and used there. In reply to this, the government claims, that, although taken to another establishment, it was one really in connection with that of the defendant, and that it was a mere device to cover up the illegality of the action, and it is for you to weigh the testimony, both for and against the government, and determine from all what was the true character of the transaction, whether it was of the character claimed by the government, or of that claimed by the defendant.

I don't know that there is any other particular point in the testimony to which I care to direct your attention. You will have in your mind the testimony given on all the points in the case, as well as upon the one I have spoken of, and I may say here that if a party should have it in his power to explain fully and make everything plain, and refuses to do so, that it is a circumstance to be taken into consideration by you; not that you are to presume that he is guilty from his failure to do so, because that is not the law. It is simply a fact to be taken into consideration with the rest of the testimony in determining his guilt or innocence. And so, if there were facts in the power of the government to produce, which would make the whole thing plain, and they failed to produce it, that is to be taken into consideration also.

I believe those are all the points I care to allude to, except to give you some rules to govern you in the examination of the evidence in the case. The law presumes the defendant to be innocent of the offence of which he stands charged until proven guilty, He enters upon the investigation of the case with that presumption of the law in his favor, and that goes with him through every step of the case, and continues with him until the testimony shall convince the minds of the jurors that he is guilty. When they are convinced of that, then the presumption of innocence must yield to the conviction of guilt. As to the degree of testimony necessary in a criminal case, I have laid down the rule several times during the term, and can but repeat what I have said, that the rules of evidence in civil and criminal cases are widely different. In civil cases a preponderance of evidence is sufficient to decide. You weigh it and ascertain on which side the balance is; if for the plaintiff, you render your verdict accordingly; if for the

defendant, you render a verdict for him; but in criminal cases it is not so. It is a wise rule of law, that before a citizen can be deprived of his life or liberty the jury must be satisfied of his guilt beyond a rea,-sonable doubt—not all doubt—but a reasonable doubt; and no preponderance of evidence, no matter how great, so long as it fail to remove every reasonable doubt of guilt, will be sufficient to justify you in returning a verdict of guilty. As to what a reasonable doubt is, the higher courts have frequently reversed the judgment of lower courts because they have not defined it accurately; in fact they intimate that it is a very questionable proceeding to attempt to define it. It must be left as made by law, reasonable. But we may say it is not any doubt or all doubts, not a speculative or imaginary doubt, but a reasonable doubt, and it must be a doubt which grows out of all the facts in the case—it is one which you cannot get outside of the facts in the case. But if after looking at all the evidence in the case and examining it carefully, as candid and honest men, there still remains in your mind an honest uncertainty of the defendant's guilt, you must acquit. There is another element in criminal cases which does not arise in all civil cases, that is, character. It is always proper for the defendant in a criminal case to put his character in issue. If he has shown a good character, one for integrity and honesty, it must be taken into consideration by the jury as an item of interest. If from all the evidence, including the defendant's character, and the presumption of innocence, there still remains in your minds a reasonable doubt of his guilt, you must acquit; but if, taking into consideration the character of the man, the presumption of innocence, the evidence, and all the circumstances in the case, there is not a reasonable doubt in your minds of his guilt, then you are bound in duty to convict.

You will take the case, gentlemen, and if you find the defendant not guilty, your verdict will be a general verdict of "Not guilty." If guilty, it will be under the first or second count, or both, as you may find from the evidence.