### Childers v. Commonwealth.

(Decided May 1, 1923.)

### Appeal from Calloway Circuit Court.

Criminal Law—Searches and Seizures—Garden and Pond Near Residence Held Immune from Search—"Houses and Possessions." —Constitution, section 10, giving immunity to the people in their persons, houses, and possessions from unreasonable search and seizure, prohibits a search without warrant of a garden and pond which were within a few yards of defendant's residence, and were appurtenant to and used in connection with the residence and situated so closely thereto as to be a part thereof, and it was error to admit in evidence liquor found by a search of the garden and pond, under a search warrant insufficient to authorize a search of the house.

JOHN G. LOVETT and WEAKS & PHILLIPS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

The evidence upon which appellant Childers was convicted of unlawfully having intoxicating liquors in his possession was obtained by officers who searched his premises under an invalid search warrant. That part of the evidence which related to whiskey found in the

residence was excluded from the consideration of the jury by the trial judge. But he allowed the jury to hear and consider evidence of what the officers found in the garden near the house and in a pond within a stone's throw of the rear of the house. Of all this evidence the appellant now complains, because he says it should have been excluded.

Learning that appellant Childers had whiskey in his house which he obtained in an unlawful manner, the sheriff and his deputies procured a search warrant and went to appellant's home for the purpose of searching it and did search it under a warrant upon which the Commonwealth does not now rely for justification. In making the search some contraband whiskey was found in the house. The officers returned to the county seat, but not being satisfied with the search they went again to the premises of appellant, late at night, and locating themselves near the house waited and watched. In the middle of the night a car drove up to appellant's house and several persons alighted and went into the house. In a few minutes appellant and his wife with a dim lantern came out of the house and went into the garden, where appellant dug something from the ground which looked like bottles or fruit jars. About the time he took up the bottles his wife warned him that officers might get him. To which he responded in substance, "I would like to see the damn officers that could take this away from me." At that time the officers were near enough to see except for the darkness. They could hear the bottles tingling. As soon as appellant and his wife went into the house two of the officers followed them and a third officer went to the back door. Just as the officer reached the back door the son of appellant ran out at the back door with two objects in his hands, presumably bottles or glass jars which he threw into the pond at the rear of the house. Next day the officers returned and made a search of the garden and found other liquors buried therein, and raking the pond they found two or more jars of white whiskey therein. As indicated above the court excluded all the evidence concerning what the officers found inside the house on the theory that no search could be made of the house without a sufficient warrant for that purpose, but he allowed the evidence concerning the whiskey that was found in the garden and in the pond to go to the jury.

Appellant says this was error and asserts that the 10th section of the State Constitution reading, "The

people shall be secure in their persons, houses, papers and possessions from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation," was violated by the admission of that testimony. He insists that the words "houses" and "possessions" employed in section 10 of the Constitution include more than the inside of the house, and that the yard, garden, pond and premises adjacent thereto were entitled to be and are in fact embraced in the words "houses" and "possessions," employed in section 10.

From the evidence we learn that the garden is very near the house. The place where the whiskey was found in the garden was also very close to appellant's residence. The pond was only a few yards back of appellant's residence. Both the pond and the garden were appurtenant to and used in connection with the residence, and so closely situated thereto as to be a part thereof. It would be practically if not utterly impossible to enjoy the full and free use of the "houses" and "possessions" without the garden and pond in such close proximity thereto as described in the evidence. This being true, the officers who were trespassers when they entered upon the premises of appellant and searched his garden and yard, and dragged his pond without a search warrant, violated section 10 of our Constitution. The purpose of this article is to preserve the sanctity of the home from the prying and inquiring eyes not only of public officers but of the public as well. The Supreme Court of the United States has laid down the rule in several different recent cases that a public officer who while unlawfully invading the "houses" and "possessions" of the accused in an effort to find evidence against him, is a wrongdoer and the evidence so obtained will not be received by a court in the trial of the case. The same court has held that an invasion of the curtilage in an effort to find evidence against an offender by officers without a search warrant, comes within the prohibition. The curtilage, according to Bouvier, is that enclosed space immediately surrounding a dwelling-house, contained within the same inclosure. Some of the courts have given the word a somewhat broader meaning and held that the curtilage includes the yard, garden, orchard and field near to and used in connection with the dwelling. Without undertaking to definitely fix the space immediately around the residence of an accused, into

which official searchers may not go in their efforts to obtain evidence without a valid search warrant, it will suffice for our present purpose to say that the facts in this case show that the searchers were upon premises so inseparable from and immediately adjacent to appellant's home as to be a part thereof, the entry of which was an invasion of the privacy of the home, and sufficient to support the conclusion that the "houses" and "possessions" of appellant, in contemplation of the constitutional provision, were unlawfully invaded by the officers in making the search and that the evidence thus obtained should have been excluded by the trial court from the consideration of the jury.

For the reasons indicated the judgment is reversed for proceedings consistent herewith.

Judgment reversed.