## UNITED STATES v. APPLE.
## SAME v. HUFF.

(District Court, D. Montana. Sept. 6, 1924.)

Nos. 4300, 4304.

1. **Searches and seizures** ⊂⊃7—**Federal officers may inspect dwelling houses wherein stills are operated without warrant.**

Those who unlawfully install stills in dwelling houses cannot take advantage of their own crimes or wrongs to defeat operation of laws of inspection and supervision, and entry by federal officers without a warrant by any plea of immunity or sanctity attaching to dwelling houses, notwithstanding Const. U. S. Amends. 4 and 5.

2. **Searches and seizures** ⊂⊃7—**Federal officers smelling liquor could enter premises and seize evidence.**

Aside from right of inspection and supervision of distilleries, federal officers, who smelled intoxicating liquor, could enter a dwelling house and seize evidence of unlawful manufacture, notwithstanding Const. U. S. Amends. 4 and 5.

3. **Intoxicating liquors** ⊂⊃255—**Liquor illicitly manufactured and instrumentalities are forfeited to United States.**

Illicitly manufactured liquor and instrumentalities used in manufacture are forfeited to and the property of the United States, and will not be restored to persons from whom seized, even if seizure was unlawful.

H. S. Apple and Ed Huff were convicted of violations of the National Prohibition Act. On motions for new trial. Motions denied.

Ronald Higgins, Asst. U. S. Atty., of Helena, Mont.

A. P. Heywood, of Helena, Mont., for defendants.

BOURQUIN, District Judge. Defendants were convicted of violations of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

In Huff's case the evidence is that the federal enforcement officers, approaching an isolated cabin in the mountains, detected the odor of fermenting mash, in an adjacent open shed observed a mash tub, bottles and jugs in which inspection disclosed traces of illicit whisky, and through the cabin window they saw two covered barrels. Forcing entrance, the barrels were found full of fermenting mash, a still was found under a bed, and evidences it had there been set up and operated. No one was about the premises, but there were evidences that Huff had been about or sojourning there. Huff presented no evidence.

In Apple's case, the said officers, passing a small town house, detected the odor of fermenting mash emanating from it. In response to their knock, Apple came to the door, and to their expressed desire to search the premises he said they could, but did not think anything would be found. At an outside entrance to the cellar of the house, the odor was emphasized, and a large quantity of sugar was visible. Apple helped the officer to force the cellar door, and in the cellar were found nine barrels of fermenting mash, jugs, illicit whisky, and a still in operation. Above, Fletcher, who was acquitted, was found in bed with a gallon jug of illicit whisky. To the officers, Apple denied living there, though at trial he testified he did live and reside there.

In neither case did the officers have any paper warrant, and for that reason in both cases timely objections were interposed, but overruled, to the evidence.

Defendants contend that error subsists (1) in admission in evidence of the articles aforesaid and of the officers' testimony; and (2) in the court's instructions that no warrant was necessary and that the officers' entry and seizures were lawful; and they move for new trials. No error appears.

In so far as "private dwellings" are concerned, in Huff's case there is no evidence that the cabin was of that character—was his settled residence and place of abode. So far as appears it was naught, but his conveniently located and operated distillery, whether or not he to some extent incidentally sojourned there while engaged in his illicit operations.

[1] In Apple's case, assuming the house to be his private dwelling, yet he converted it into a distillery and therein carried on the business of a distiller, and, having impressed the latter character upon it, he even as Huff thereby consented and contracted to permit all the federal inspection and supervision that the laws provide. The internal revenue laws prohibit stills in dwelling houses, and those who unlawfully install them therein cannot take advantage of their own crimes or wrongs to defeat the operation of the laws of inspection and supervision, by any plea of immunity or sanctity attaching to dwelling houses. Said laws authorize federal officers to enter any distillery at any time, to inspect, to gauge, to assess and collect taxes, and to seize for forfeiture all liquor upon which taxes are due, evaded and unpaid, and the instrumentalities of its production. Searches and seizures to that end are not unreasonable, require no special or paper warrant, are not obnoxious to the Fourth or Fifth Amendment, and were authorized at the inception of, and have endured throughout this government. See Boyd v. U. S., 116 U. S. 623 et seq., 6 Sup. Ct. 524, 29 L. Ed. 746. All these internal revenue laws are by the Prohibition Act extended to illicit liquors. The provisions of said act forbidding search of private dwellings without a search warrant, and prohibiting search warrant unless the dwelling is being used for unlawful sale of intoxicating liquor or unless in part used for some business purpose, have no application to the cases at bar. In so far as the instant premises were dwelling houses, they were used for the business purpose of distillation of spirits by distillers, and had been converted to distilleries and subjected to the aforesaid revenue laws. To contend otherwise is to impute to Congress intent to encourage the infant industry of illicit family distilleries, to sanction the most pernicious evil of the day, and to undermine obedience to law, respect for government, and national morality. No such imputation is justified by any language of the Prohibition Act.

[2] Moreover, aside from the internal revenue laws, there was lawful authority to enter and seize. The officers were cognizant of crimes, felonies being committed in the premises. Always was authority to break, enter, search and seize in such circumstances; and neither before nor after the Fourth and Fifth Amendments was it unreasonable. Otherwise, the householder might set up and operate his still as a parlor ornament in the front window and with complete immunity—an absurdity for which no reasonable basis is found in the Prohibition Act.

[3] In passing it may be said that the liquor and instrumentalities are forfeited to and the property of the United States. Hence, regardless of any unlawful seizure, they are not to be restored to defendants. As well might it be contended that, if A. breaks into B.'s house and recaptures A.'s property by B. stolen and concealed therein, A. can be compelled to return it to B. on the latter's petition in court.

True, Amos' Case, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, is cited in support of defendants' claim of right to be restored to possession of the articles seized; but in that case no account was taken of the forfeiture, and it is not controlling here.

New trials denied.