## UNITED STATES v. A CERTAIN DISTILLERY, Etc.

District Court, E. D. Louisiana. February 22, 1928.

No. 18956.

1. Intoxicating liquors ⬅249—Question whether lessor knew rented premises were being used for manufacture of liquor was not determinable on motion to quash search warrant.

Question whether lessor, renting premises, knew that outbuildings or sheds on his premises were being used for manufacture of liquor, could not be considered on motion to quash search warrant and suppress evidence, though it might be material if evidence of finding liquor should be held admissible.

2. Searches and seizures ⬅7(7)—Whether search warrant violates constitutional rights is determined by facts sworn to in affidavit (Const. Amends. 4, 5).

Alleged violation of property owner's rights under Fourth and Fifth Amendments of the Constitution by illegal search is determined by facts sworn to in affidavit for search warrant, and not by conclusions of affiant, or by the evidence disclosed by the search.

3. Intoxicating liquors ⬅249—Searches and seizures ⬅7(6)—Rigid rules of construction are applicable in determining validity of warrant for search of dwelling for liquor (Const. Amends. 4, 5; National Prohibition Act, tit. 2, § 25 [27 USCA § 39]).

Warrant for search of dwelling for intoxicating liquors must be rigidly construed, under Const. Amends. 4 and 5, and rules of construction are not relaxed by National Prohibition Act, tit. 2, § 25 (27 USCA § 39), confining issuance of warrants for search of private dwellings.

4. Intoxicating liquors ⬅248—Warrants based merely on affiant's detection of odor of intoxicating liquor emanating from dwelling are insufficient to authorize search of dwelling (National Prohibition Act, tit. 2, § 25 [27 USCA § 39]).

National Prohibition Act, tit. 2, § 25 (27 USCA § 39), confining issuance of warrants for search of private dwellings to cases where dwelling is used for sale of liquor, or for some business purpose, held to render unlawful use of warrants for search of dwellings, based merely on detection of odor of liquor proceeding from dwelling.

5. Intoxicating liquors ⬅249—Use of dwelling house for manufacture of liquor held not "business purpose," within statute, so as to permit issuance of search warrant (National Prohibition Act, tit. 2, § 25 [27 USCA § 39]).

Manufacture of liquor in a dwelling house held not to constitute use of dwelling house for "some business purpose," within meaning of National Prohibition Act, tit. 2, § 25 (27 USCA § 39), permitting issuance of warrants for search of private dwelling so used, in view of language of statute, "business purpose such as store, shop, saloon, restaurant, hotel, or boarding house," since statute contemplates open, manifest invitation to entrance to public for business purposes.

[Ed. Note.—For other definitions, see Words and Phrases, Business Purposes.]

6. Intoxicating liquors ⬅248—Warrant for search of private dwelling, issued on affidavit stating premises were used for manufacture of liquor, and that affiant perceived fumes of liquor in process of manufacture emanating therefrom, held unauthorized (26 USCA §§ 261, 306, 1181, 1185; National Prohibition Act, tit. 2, § 25 [27 USCA § 39]).

In libel proceeding under Rev. St. §§ 3257, 3281, 3450, 3453 (26 USCA §§ 261, 306, 1181, 1185; Comp. St. §§ 5993, 6021, 6352, 6355), for forfeiture of dwelling house and outbuildings for use in manufacturing liquor, warrant for search of premises, issued on affidavit alleging that premises were "used in part for business purposes, to wit, for the manufacture of intoxicating liquor," and "that * * * affiant alleged he did perceive the fumes of certain intoxicating liquors in the process of manufacture * * * emanating from said premises," held not authorized, under National Prohibition Act, tit. 2, § 25 (27 USCA § 39), permitting warrants for search of private dwellings only where used for unlawful sale of liquor, or for "some business purpose, such as a store, shop, saloon, restaurant, hotel, or boarding house."

Forfeiture Libel. Proceeding by the United States against a certain distillery located at 439 Brockenbraugh Court, Metarie Ridge, Jefferson Parish, Louisiana; Guiseppe Cangemi, claimant. On claimant's motion to quash the search warrant and suppress evidence. Motion to quash sustained, and rule to suppress evidence made absolute.

Dempsey & Monie and J. G. Dempsey, Jr., all of New Orleans, La., for claimant.

Wm. H. Norman, Asst. U. S. Atty., of New Orleans, La.

BURNS, District Judge. The libel of information in this case is for forfeiture, under sections 3450, 3453, 3257, and 3281 of the Revised Statutes (26 USCA §§ 1181, 1185, 261, 306; Comp. St. §§ 6352, 6355, 5993, 6021), of certain real estate designated as No. 439 Brockenbraugh Court, in a suburb of New Orleans, consisting of a dwelling house, its outbuildings, and all its contents, including certain property designed

for the manufacture of intoxicating liquor. The premises occupy three city lots.

Charging violations in the language of these various statutes to one Guiseppe Cangemi as the operator of the distillery thereon, the libel itemizes with particularity all of the household furniture, personal effects, and wearing apparel, as well as the distillery equipment, according to its location in the outbuildings or sheds, the yard, and in various parts of the dwelling house proper.

The claimant, Cangemi, opposes the forfeiture by exception and answer. He also filed for hearing in limine this motion to quash the search warrant and to suppress the evidence obtained thereby. The warrant, which was issued upon the affidavit of a federal prohibition agent, reads in its material part as follows:

"That he hereby makes application for the issuance of a search warrant to search the premises, No. 439 Brockenbraugh Court, Jefferson parish, Louisiana, and within the Eastern district of Louisiana, New Orleans division; that said premises are described as ONE-STORY FRAME BUILDING AND OUT-HOUSES, being the premises of unknown party; that the said premises are not *occupied solely as a private dwelling,* but are used in part *for business purposes, to wit,* FOR THE MANUFACTURE OF INTOXICATING LIQUOR; that particularly on or about the 26th day of October, 1927, affiant alleges that HE DID PERCEIVE THE FUMES OF CERTAIN INTOXICATING LIQUORS IN THE PROCESS OF MANUFACTURE, a more particular description of said liquors is to affiant unknown, EMANATING FROM SAID PREMISES, and that he is positive that there is now possessed in and upon said premises certain intoxicating liquors, together with property designed and used for the manufacture of intoxicating liquor, a more particular description of which is to affiant unknown, all of which is in violation of sections 2, 3, 6, and 25 of title 2 of the National Prohibition Act, approved October 28, 1919, and against the peace and dignity of the United States."

Warrants issued upon such affidavits have become known in this district as "smell warrants." They were designed to overcome the difficulty and delay experienced by prohibition agents in obtaining access to private dwellings, where the manufacture of intoxicating liquor was suspected, in the absence of proof of an unlawful sale of intoxicating liquor therefrom, or of the use of the premises in part for some business purpose.

[1] By his answer on the merits Cangemi contends that the outbuildings or sheds where the still was found were rented by him to third parties, unnamed, and he did not know that the same were being put to an unlawful use, whereas the description and location of the unlawful property on the premises suggests the contrary very strongly. These issues, however, cannot be considered in limine. Of course, if the evidence was legally obtained, the forfeiture of his property would be likely to follow, whether he was the principal offender or merely an aider and abettor with guilty knowledge of the act of another upon the premises.

The warrant ordered a search of the whole premises, viz. "No. 439 Brockenbraugh Court, Jefferson parish, Metarie, one-story frame building and outhouses." Notwithstanding that the search under the warrant extended throughout the whole premises, and the fact that the unlawful property was distributed all over the place, the government seeks to isolate the outhouses or shed where the still was located, and to justify the search and the use of the evidence obtained thereby upon a trial on the merits by a decision of the Circuit Court of Appeals (5th Circuit) in the case of Monaghan v. United States, 5 F.(2d) 424, where a search restricted to a shed was sustained under a warrant issued upon an affidavit by a prohibition agent, who swore directly that he had actually seen intoxicating liquor and certain property designed for its manufacture therein on a previous visit.

[2] The facts sworn to in the affidavit, and not the conclusions of the affiant, nor the evidence disclosed by the search, must determine whether the rights guaranteed Cangemi by the Fourth and Fifth Amendments of the Constitution were invaded under this particular warrant.

[3] Rigid rules of construction are settled by the authoritative jurisprudence under the Fourth and Fifth Amendments, but even these are contracted, certainly not relaxed, by the restriction of title 2, section 25, of the National Prohibition Act (27 USCA § 39). Compare Marron v. U. S., No. 185, 48 S. Ct. 74, 72 L. Ed. ——, and also U. S. v. Berkeness, No. 175, 48 S. Ct. 46, 72 L. Ed. ——, with Boyd v. U. S., 116 U. S. 616, 624, 6 S. Ct. 524, 29 L. Ed. 746, Weeks v. U. S., 232 U. S. 383, 391, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and Agnello v. U. S., 269 U. S. 20, 34, 46 S. Ct. 4, 70 L. Ed. 145.

The restriction in section 25 confines the issuance of warrants for the search of private dwellings to two specific instances, viz.: Where such dwelling is "used for the unlaw-

ful sale of intoxicating liquor"; or where such dwelling is "in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house."

In the Berkeness Case, cited supra, the Supreme Court emphatically approved the conclusion reached by the District Court of Alaska, viz. that by the legislation (meaning the Prohibition Acts) subsequent to the Alaska Dry Law of February 14, 1917 (48 USCA § 26 et seq.; Comp. St. § 3643b et seq.) Congress imposed a limitation on the right to search a private dwelling. The opinion further declares: "Notwithstanding known difficulties attending enforcement of prohibition legislation, Congress was careful to declare in the National Prohibition Act [27 USCA] that mere possession of liquor in one's home 'shall not be unlawful,' and to forbid procurement of evidence through warrants directing search of dwellings strictly private not alleged to be used for unlawful sale. The definite intention to protect the home was further emphasized by section 6, Act of 1921." Act Nov. 23, 1921, 42 Stat. 222 (18 USCA § 77). In disposing of an argument on behalf of the government, the court continued in these words: "But the emphatic declaration that no private dwelling shall be searched except under specified circumstances discloses a general policy to protect the home against intrusion through the use of search warrants."

[4-6] I take this declaration to be decisive of this case, and conclude that the use of so-called smell warrants should not longer be countenanced. On the face of the affidavit, in its material part, it appears plainly that the affiant could not swear to the first specific circumstance required by the statute, viz.: "That the private dwelling occupied as such * * * is being used for the unlawful sale of intoxicating liquor." He therefore resorted to swearing to his own "positive" conclusion that "it is used in part for business purposes, to wit, for the manufacture of liquor." His conclusion is drawn by inference from his sole allegation of fact, viz.: "That he perceived the fumes of certain intoxicating liquors in the process of manufacture."

The myopia peculiar to officious zeal is necessary to bestow serious consideration on that conclusion. The least careful observer of average intelligence knows how difficult it is for the sense of smell to detect the source of emanation of an odor, and knows that vegetable matter in the process of boiling or stewing smells identically, whether the cooking be for food or beverage purposes, and whether the cooking proceeds within a city dwelling for human consumption or on a rural farm for stock feed; that the confusion of smells in cities varies with the density and character of the population; and that these odors are yet more difficult to trace to a shed within the curtilage of a city dwelling located on one or several city lots. Even though it were assumed, however, that such sense perception would otherwise justify the acceptance of such an affidavit, the fact still remains that a manufacturing operation in the production of whisky, wine, or beer in a dwelling house does not convert that dwelling house into a distillery, brewery, or vineyard.

This disposes of the sole question presented here for decision. Stripped of the irrelevant attempts of the government to test the validity of the search warrant, not by the supporting affidavit, but by the result of the search, by the pleadings of the defendant on the merits, and by segregating the shed or outhouse from the remainder of the premises, of which it is an integral part of the curtilage, the contention of the government is that the phrase, "in part used for some business purpose such as a store, shop, saloon, restaurant, hotel or boarding house," is illustrative rather than exclusive, and further that the "manufacture of liquor" in a dwelling house constitutes "some business purpose" within the meaning of the statute.

The only decision offered in support of that contention is one by a former judge of this district in the case entitled In re Mobile (D. C.) 278 F. 949. The contrary view seems conclusively shown by the text immediately succeeding the statutory phrase in question, by which Congress sought to prevent any tendency to loose construction by adding a definition to emphasize its meaning: "The term 'private dwelling' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house."

Moreover, the terms "such store, shop, restaurant, hotel or boarding house" plainly contemplate an open, manifest invitation to entrance to the public for business purposes, such as is peculiar to stores, shops, restaurants, saloons, and boarding houses operated in conjunction with, or in the same premises with, the residence of the occupant. Such a place is easily distinguished from a private dwelling used solely as such, though the latter might covertly or clandestinely be used by the occupant for the concealment of il-

licit or criminal occupations or behavior. This construction of the phrase "business purpose" in this statute has been frequently adopted by the various Circuit and District Courts, as indicated in the decisions cited by the defendant:

U. S. v. Kelih (D. C.) 272 F. 484, 488, where Judge Fitzhenry condemned the attempt of a prohibition officer to find the ultimate fact in his affidavit, which should be ascertained by the commissioner issuing the warrant. He further held that a dwelling house did not cease to be a private dwelling house because a still was operated therein.

U. S. v. Jajeswiec (D. C.) 285 F. 789, where Judge Brewster approved and followed the Kelih decision.

Pressley v. U. S., 289. F. 477, where the Circuit Court of Appeals (Fifth Circuit) reversed a decision sustaining a search of a dwelling house where the warrant authorized a search of that part only used as a shoe shop.

Singleton v. U. S., 290 F. 130, where the Circuit Court of Appeals (Fourth Circuit) condemned a warrant supported by an affidavit sworn by a prohibition officer before a state official.

U. S. v. Palma (D. C.) 295 F. 149, where Judge Brewster quashed a warrant predicated upon a detection by smell. He specifically concluded that he was unable to adopt the view that, because a man sees fit to carry on an unlawful enterprise in his home, he thereby destroys the character of the house as his dwelling place, and he reaffirms the rule laid down in his district in the Jajeswiec Case; i. e., that before a search warrant can issue under title 2, section 25, the affiant must show to the satisfaction of the commissioner that the place to be searched was being used (a) for the unlawful sale of intoxicating liquor (in which case a private residence may be searched); or (b) it must be shown to the satisfaction of the commissioner that the place to be searched is "not a private residence used as such," or, if a residence, it is "in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house."

Voorhies v. U. S., 299 F. 275, where the Circuit Court of Appeals (Fifth Circuit) approved the quashal of an illegal search warrant, but also approved a refusal of the District Court to return the unlawfully possessed liquor, suppressed as evidence.

Staker v. U. S., 5 F.(2d) 312, where the Circuit Court of Appeals (Sixth Circuit) held that the statute does not authorize the issuance of a search warrant for a dwelling house merely because it is being used for the manufacture of liquor. It further refused to justify the search on the ground that the prohibition agents were peace officers and that an offense was being committed in their presence, where they smelled the liquor from the outside but did not see the offender in their presence.

Lindsly v. U. S., 12 F.(2d) 771, where the Circuit Court of Appeals (Fifth Circuit) reversed and remanded a decision by a late judge of this district court, in which the officers entered the defendant's home during his absence over the protest of his wife, without a warrant, and held that the evidence obtained should have been rejected upon the authority of the Agnello Case, supra, and condemned the action of the prohibition agents as an offense under section 6 of the Willis Campbell Act of November 23, 1921, 42 Stat. 223 (18 USCA § 77).

U. S. v. Costanzo (D. C.) 13 F.(2d) 259, where Judge Hazel suppressed evidence obtained by city police officers, who entered a private dwelling house without a warrant in a raid engineered by prohibition agents.

U. S. v. Vallos (D. C.) 17 F.(2d) 390, where Judge Kennedy suppressed evidence, holding that a private residence could not be searched, except upon proof of its use for unlawful sale, citing the Agnello Case, supra.

Simmons v. U. S., 18 F.(2d) 85, where the Circuit Court of Appeals (Eighth Circuit) reversed a District Court opinion sustaining a search made upon an affidavit sworn to by a prohibition agent in a state court, and reiterating the well-established rule, with a copious citation of authorities, that the affidavit for a search warrant must affirm facts, and not merely express beliefs or suspicions, and that these facts must be sworn to by one having personal knowledge; that a mere belief of the affiant is not sufficient basis for a warrant, and that the probable cause for the issuance of such warrant must be based on evidence of sales.

U. S. v. Boscarino (D. C.) 21 F.(2d) 575, in which Judge Hazel quashed search warrants predicated upon the perception by smell in so far as they affected a dwelling house, but sustained others of similar character solely upon the ground that certain other buildings were obviously used solely for the manufacture of liquor and located beyond the curtilage of the private dwelling. This decision is similar to that in the Monaghan Case cited supra.

Thompson v. U. S. 22 F.(2d) 134, where the Circuit Court of Appeals (Fourth Circuit) suppressed the use of evidence obtained

by a search under a warrant which failed to show an unlawful sale from a dwelling house, although the warrant was executed in a raid led by state officers accompanied by a federal officer. It condemned the search upon the ground that it was conducted as a joint enterprise between the federal and state officers.

And finally, Nobriga et al. v. U. S., 22 F.(2d) 507, where the Circuit Court of Appeals (First Circuit) reversed a decision of the District Court overruling a motion to quash a search warrant and suppress evidence predicated upon a Federal prohibition agent's affidavit that he "saw a still in operation and smelled odor of fermenting mash." The court specifically held that, even if the words "store, shop, saloon," etc., are not exclusive, but merely illustrative, certainly the operation of a still in a dwelling house would not be a business purpose of which the words of the statute are illustrative. It further held that the sufficiency of the affidavit must be determined by the statement of facts which it contains, and not by the result of the search.

This rather extended review of the decided cases variously reflects the general conviction of the courts that Congress had no intention to place "the liberty of every man in the hands of every petty officer." Mr. Justice Bradley, quoting James Otis in the Boyd Case, supra. And they seem to further show a general recognition that Congress assumed that the courts and federal officials would recognize the effect of the Fourth Amendment putting them, in the exercise of their power and authority, "under limitations and restraints" so that it might "forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law." Mr. Justice Day, in the Weeks Case, supra. This limitation "reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions * * * should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." Id.

Accordingly, the motion to quash the search warrant will be sustained, and the

24 F.(2d)—36

rule to suppress the use of the evidence obtained thereby will be made absolute, and a decree may be entered accordingly.