## RANIELE v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
September 28, 1929.

No. 8408.

Joseph C. Henley, of Keewatin, Minn. (John T. Naughtin, of Hibbing, Minn., and

William J. Archer, of Virginia, Minn., on the brief), for appellant.

Robert V. Rensch, Asst. U. S. Atty., of St. Paul, Minn. (Lewis L. Drill, U. S. Atty., and James A. Wharton, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for the United States.

Before BOOTH, Circuit Judge, and DEWEY, District Judge.

BOOTH, Circuit Judge. This is an appeal from a judgment of conviction of appellant, who was charged by indictment with having in his possession on February 10, 1928, an unregistered still used and intended to be used in the manufacture of distilled spirits.

Prior to the trial, defendant made a motion to suppress certain evidence which had been obtained by an alleged unlawful search of his home. Ruling on the motion was withheld without prejudice to defendant's rights. At the trial, objection was made to the introduction of any evidence so obtained. The objection was overruled and exception taken. At the close of the trial, motion was made for a directed verdict, on the ground that apart from the evidence so obtained there was no evidence sufficient to support a verdict of guilty, and that the evidence so obtained was inadmissible. The motion was overruled and exception taken.

The record clearly shows, and we understand the government concedes, that, apart from the evidence obtained by the search, there was no sufficient evidence to support a verdict of guilty.

The sole question on this appeal is whether the evidence obtained by the search was admissible against the defendant.

There was testimony on the trial tending to establish the following facts: On February 10, 1928, about 2 o'clock in the afternoon, Matt Viitala, a prohibition agent, accompanied by another man, went to Keewatin, Itasca county, Minn., where defendant lived. Viitala had been told by some one that there was a still in a house in that village. The house was described to him, but he did not know who resided there. Viitala and his companion drove into an alley at the rear of the house, and from 60 to 80 feet distant therefrom. They alighted, entered the yard, and approached the house. Neither Viitala nor his companion had a search warrant, nor did they have any information on which a search warrant could be obtained. When within 30 or 40 feet of the house they smelled an odor which they recognized as the odor of fermenting mash. Up to that point they

had detected no odor. As they approached the house, the odor became stronger. They went to the back door of the house, which was open, and Viitala rapped. The wife of appellant came to the door, and, upon inquiry, stated she was the woman of the house. Viitala told her that he was a federal officer, and asked where her husband was. She said he was in the basement. Viitala asked how to get down there, and she pointed out the way. Viitala went downstairs to the basement. His companion remained outside the house. When Viitala reached the foot of the basement stairs he saw a small room into which the stairs led, and an open, wide doorway leading into a larger room. He saw in the latter room two large stills and other apparatus, and appellant and four other men standing by the doorway. The stills were in operation. He also saw some of the mash. Viitala approached the men and asked who was the boss of the place, and appellant said he was. Viitala placed him under arrest, and then called his companion down into the basement. No registry stamp or registry license for a still was found. They destroyed the stills and other apparatus; also the sugar mash and the moonshine, first taking samples thereof. These samples were introduced in evidence upon the trial.

It is the contention of appellant that this search and seizure in his home without a search warrant were in violation of his constitutional rights, and that the evidence so obtained was improperly admitted in evidence against him.

Section 25 of title 2 of the National Prohibition Act (U. S. C. tit. 27, § 39 [27 USCA § 39]) provides as follows: "Unlawful possession of liquor or property designed for manufacture thereof; search warrants. It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this chapter or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in sections 611 to 631, and 633 of Title 18, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order. No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale

of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house. The term 'private dwelling' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house. The property seized on any such warrant shall not be taken from the officer seizing the same on any writ of replevin or other like process."

Section 53, tit. 18, U. S. C. (18 USCA § 53), provides as follows: "Searches without search warrant; punishment. Any officer, agent, or employee of the United States engaged in the enforcement of Title 27 (the National Prohibition Act) or any other law of the United States, who shall search any private dwelling as defined in Title 27 (National Prohibition Act), and occupied as such dwelling, without a warrant directing the search, or who while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property, shall be guilty of a misdemeanor and upon conviction thereof shall be fined for a first offense not more than $1,000, and for a subsequent offense not more than $1,000 or imprisoned not more than one year, or both such fine and imprisonment."

It is admitted by the government that it possessed no sufficient facts to form the basis for the issuance of a search warrant under section 25, supra. But the government contends that, notwithstanding the fact that a search warrant could not be obtained under section 25, yet the prohibition agent was empowered to enter and search the home of appellant because a crime was being committed in the presence of the agent; and that this gave him the right to arrest the criminal, and, as incidental to the arrest, the right to make the search.

It is argued by counsel for the government that, although the general rule has long been recognized that, except in cases where the public necessity demanded it, arrest without a warrant has been considered unlawful, yet that well-established exceptions to the rule have also been recognized in cases of felonies and in cases of misdemeanors and breaches of the peace committed in the presence of the party making the arrest; that arrests in such cases may be made by peace officers and by other special officers appointed for particular purposes; that prohibition agents are clothed with such powers by virtue of section 28 of title 2 of the National Prohibition Act (27 USCA § 45) and section 788, Revised Statutes (28 USCA § 504).

Assuming, but without deciding that the sections of the statutes cited do bestow powers upon prohibition agents of the general nature of those possessed by peace officers and special officers appointed for particular purposes, yet we think it by no means follows that it was the intention of Congress that the provisions of those sections should render nugatory the strict provisions of section 25 of title 2 of the National Prohibition Act (27 USCA § 39) and of section 6 of the amendatory act (Act Nov. 23, 1921, 42 Stat. 223, U. S. C. title 18, § 53 [18 USCA § 53]) above quoted. Those strict provisions have been held to evince a policy on the part of Congress. United States v. Berkeness, 275 U. S. 149, 48 S. Ct. 46, 72 L. Ed. 211.

 The question of the proper and harmonious construction of the several sections respectively of the statutes above cited is an important one, and may not be free from doubt. We do not find it necessary, however, to determine such construction in the case at bar, for the reason that we do not assent to the minor premise in the argument for the government, which is stated thus in its brief: "The Government agent had direct personal knowledge through his sense of smell before entering the house that a crime was being committed in his presence."

Let us examine this step in the argument. What was the crime that was being committed in the presence of the prohibition agent? The crime for which defendant was indicted was that of having in possession a still used and intended for use in manufacture of distilled spirits, which still had not been registered. If this was the crime, the evidence of which came to the prohibition agent as he approached the premises, what was that evidence? The odor of fermenting mash. The prohibition agent testified that he was experienced in the smell of fermenting mash; that it was peculiar and could not be mistaken for some other odor. Conceding that this is true, in spite of our very grave doubts on the subject, yet the knowledge of the prohibition agent of the crime being committed in his presence is not made out, and for two reasons: First, the smell did not give the prohibition agent knowledge that any person was in the house or had possession or control of the fermenting mash. If the prohibition agent had entered the house and found no person there, but had seized the still, and the next day had found the owner of the house in town and had arrested him, it could hardly be claimed that the search and seizure were lawful, and that the evidence thus obtained was admissible

against the owner. The fact that the prohibition agent happened to find the owner in the house does not alter the case. After-acquired knowledge could not legalize a search unlawful when made.

There is a second reason why the prohibition agent did not have knowledge through his sense of smell that the crime in question was being committed in his presence. Let it be granted for the sake of argument that the sense of smell gave the prohibition agent knowledge that there was fermenting mash in the house. This was not knowledge that there was a still in the house; much less that the still was unregistered. There was no evidence to show, and it is not claimed, that the smell of fermenting mash from an unregistered still is any different from the smell of fermenting mash from a registered still, from an ordinary cauldron, or from a kitchen stewpan.

The truth of the whole matter seems to be that the prohibition agent detected a smell coming from the residence, which he assumed or inferred was the smell of fermenting mash; he assumed further that some person was in the house in possession of a still containing the mash; he assumed further that the still was unregistered. This series of assumptions would not be admissible evidence in court to prove that a crime was being committed; neither did it constitute knowledge in any true sense of the word on the part of the prohibition agent that the crime for which defendant was afterward indicted was being committed in his presence.

But, passing by this lack of knowledge and lack of evidence that a crime was being committed in the presence of the prohibition agent, and assuming that his knowledge was such that he was authorized to enter the house and to make an arrest, and, as incidental to the arrest, was further authorized to make a search, this was not what he did. On entering the house he found a female of adult age, who said she was the woman of the house. No arrest was then made, but the prohibition agent proceeded to search the house by going to the basement, where he found the stills and other apparatus, together with the mash and moonshine. Thereupon he arrested the defendant. In other words, the arrest was incidental and subsequent to the search, instead of the search being incidental to the arrest. That the search and seizure under such circumstances and without a warrant was illegal, we think requires no argument.

Many cases have been cited by counsel relating to searches and seizures. Some of them are collected in a marginal note.[1] We have examined them and think that, when the particular facts in each case are considered, the conclusions reached therein are not opposed to, but support, the conclusions which we have reached in the case at bar.

The case of Gerk v. United States (C. C. A. 8) 33 F.(2d) 485, is of course, readily distinguishable from the case at bar, because in that case the building was held not to be a dwelling and the arrest was made prior to any search.

We hold that the search and seizure were illegal, that the evidence thus obtained should have been suppressed, and that defendant's motion for a directed verdict should have been granted.

Judgment reversed.

---

[1] Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; Temperani v. United States (C. C. A.) 299 F. 365; Garske v. United States, 1 F.(2d) 620 (C. C. A. 8); United States v. Gaitan (D. C.) 4 F.(2d) 848; Peru v. United States, 4 F.(2d) 881 (C. C. A. 8); Staker v. United States (C. C. A.) 5 F.(2d) 312; Brock v. United States, 12 F.(2d) 370 (C. C. A. 8); Henderson v. United States, 12 F.(2d) 528, 51 A. L. R. 420; Koth v. United States (C. C. A.) 16 F (2d) 59; Lee Kwong Nom v. United States (C. C. A.) 20 F.(2d) 470; Cola v. United States (C. C. A.) 22 F.(2d) 742; Benton v. United States (C. C. A.) 28 F.(2d) 695.