## STARK v. UNITED STATES.
### No. 8793.

Circuit Court of Appeals, Eighth Circuit.
Nov. 14, 1930.

Grenville P. North, of Omaha, Neb. (Harold P. Caldwell, of Omaha, Neb., on the brief), for appellant.

Edson Smith, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., of York, Neb., Ambrose C. Epperson, Asst. U. S. Atty., and George A. Keyser, Asst. U. S. Atty., both of Omaha, Neb., and Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case the appellant, hereinafter referred to as defendant, and his brother, Arthur S. Stark, were indicted in an indictment

of five counts, the first charging the unlawful making of mash not on the premises of a duly authorized distillery; the second, the unlawful fermenting of mash not on the premises of a duly authorized distillery; the third, the unlawful separating spirits from mash, the defendants not being authorized distillers; the fourth, the unlawful carrying on of the business of distillers with intent to defraud the United States of the tax on thirty gallons of spirits; and, the fifth, charging the defendants with the unlawful possession of property designed for the manufacture of intoxicating liquor, intended for use in violation of title 2 of the National Prohibition Act (section 25 [27 USCA § 39]).

Before indictment, complaint seems to have been filed before a United States commissioner, presumably charging these defendants with the five offenses for which they were later indicted. While the matter was pending before the United States commissioner, the defendants interposed a motion to suppress and quash the evidence to be produced against them, on the ground that it had been obtained in violation of the Fourth Amendment to the Constitution of the United States and section 6 of the act supplemental to the National Prohibition Act (18 USCA § 53). On the hearing before the United States commissioner oral testimony was submitted by the government and by the defendants, as well as an affidavit of the defendant Emil J. Stark. It does not appear whether the commissioner sustained the motion to suppress or not, but it is to be inferred that the motion was sustained because the complaint was dismissed. After the return of the indictment and before trial, a motion to suppress, to which was attached a transcript of the testimony submitted before the United States commissioner, was brought on for hearing. In addition to the transcript of the testimony submitted to the commissioner, the court heard oral testimony and denied the motion, to which denial the defendant excepted.

On trial Emil J. Stark was convicted on all counts, but as to the defendant Arthur S. Stark the jury disagreed. From the judgment and sentence entered against the defendant Emil J. Stark, he has appealed to this court. The grounds on which he assails the conviction are: (1) That the trial court erred in overruling his motion to suppress the evidence claimed by him to have been secured in violation of the Fourth Amendment to the Constitution of the United States, and (2) in admitting in evidence, over his objection, the evidence so secured. (3) It is also urged

that the evidence is insufficient to sustain the judgment of conviction, but this is bottomed on the contention that the testimony introduced over his objection was improperly received in evidence, so that the controlling question is whether or not the court erred in overruling his motion to suppress and in admitting the evidence secured by the search and seizure.

The evidence introduced on the motion to suppress was sufficient to warrant the finding of the following facts: Prohibition agents had received information that there was a still being operated near the old river bed of the Elk Horn river, about twenty-five miles west from Omaha, Neb. On the morning of February 11, 1929, five prohibition agents were searching for such a still. The weather was cold and there was some snow on the ground. These agents observed Arthur S. Stark, codefendant and brother of the appellant, walking along the river bed, and, after observing his movements for some time, two of the agents accosted him, while two others passed on to a field in the direction he had been going before he had observed the agents. When first observed he was carrying a package, which he placed in a tree, and, when later examined, it was found to contain a lunch. After walking some three hundred yards, the two advancing agents observed tracks leading up to the south bank of the old river bed. Before they reached the bank, they smelled the odor of fermenting mash, and on reaching the top of the bank they discovered a cave. The top of the cave was even with the ground, and was so constructed that it could not be seen by any one until he got up to it. The roof of the cave was covered with dirt, so that it looked like the field. There were two square trapdoors opening into opposite corners of the cave. These doors were open. One of these advancing agents went to one of the doors, and the other went to the other door. Looking down through the door into the cave, each of these officers saw a large still in operation and the defendant Emil Stark in the cave, stooping over, getting some liquor from where it came out of the coil. One witness testified:

"I went up to the northwest opening and looked in and saw a large still in there. It was running in full operation, and Emil Stark was in the cave, stooping over, getting some liquor from where it came out of the coil."

The agents accosted Stark, placed him under arrest, and ordered him to come out of the cave. He told these officers that he had

started the still that morning; that he had set the mash about two weeks before; that the still was his; that nobody else had anything to do with it; that the land did not belong to him; that the man who owned the land did not know that he was operating a still on it. There was no house on the land. The cave was in an open field. No search was made of the cave until the defendant was placed under arrest, when, as incident to the arrest, a search of the cave was made, and there was found therein a 150-gallon still, 750 gallons of mash, 30 gallons of whisky, a quantity of gasoline, and various articles or utensils belonging to the distilling equipment. There was no residence building within half a mile of the cave. The cave was one hundred yards or more from the nearest part of the fence which inclosed the field. The defendant had an oral lease for the premises. He did not take the witness stand, either in support of his motion nor on the trial, but he filed an affidavit in support of his motion in which he stated that, "I cooked my meals and ate them in said house, and generally used the same for a place to live in, and generally used the same as my home." No household furniture and no bed or bedding were found in this cave. The defendant Arthur S. Stark was, when overtaken by the officers, carrying a lunch toward this cave, and, when searched, there was found in his pocket two table forks. These prohibition officers had no search warrant authorizing them to search the premises in question. There was other evidence introduced by the government in support of the charges contained in the indictment, but, in our consideration of the motion to suppress, we are limiting our attention to the testimony produced on that issue. And, first, we may say that there was no evidence produced sustaining the contention now made that this cave ever constituted the home of the defendant; in fact, one of the witnesses produced by defendant in support of his motion testified that the defendant lived about a mile away, at the home of Seimans Ziemers. The claim that this cave constituted a home appears still more preposterous if the other evidence produced at the trial be given consideration.

The Fourth Amendment is in part as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Constitutional provisions for the security of person and property are to be liberally construed, and "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 535, 29 L. Ed. 746; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647. This is true regardless of whether the defendant be guilty or innocent of the offense charged. It seems to be the contention of the defendant that, regardless of whether this cave can be considered his home, the search was violative of his constitutional rights because he had a lease of the twenty acres on which this cave was located, and hence that any one passing to this cave must of necessity be a trespasser, and that the entire premises were protected from search by reason of his lease thereof. This contention is clearly untenable. The protection accorded by the Fourth Amendment cannot be extended to the open fields. As said by Mr. Justice Holmes in Hester v. United States, 265 U. S. 57, 44 S. Ct. 445, 446, 68 L. Ed. 898:

"The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226."

See, also, McBride v. United States (C. C. A.) 284 F. 416; Gracie v. United States (C. C. A.) 15 F.(2d) 644.

Aside from the foregoing considerations, it is to be observed that, before the officers entered the cave, they had positive knowledge that the defendant was actually engaged in the commission of a crime; in fact, a felony was being committed in their presence. They placed him under arrest, and their authority so to do is not questioned on this appeal. As incident to this lawful arrest, the officers had a right, without a search warrant, contemporaneously to search, not only the person of the defendant arrested while committing the crime, but the place where the arrest was made, in order to find and seize things connected with the crime. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 5, 70 L.

Ed. 145, 51 A. L. R. 409; Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 287, 69 L. Ed. 543, 39 A. L. R. 790; Dibello v. United States (C. C. A.) 19 F.(2d) 749; Gerk v. United States (C. C. A.) 33 F.(2d) 485; Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 77, 72 L. Ed. 231. In Carroll v. United States, supra, the court says:

"When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution."

In Agnello v. United States, supra, it is said:

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted."

In Marron v. United States, supra, in an opinion by Mr. Justice Butler, it is said:

"When arrested, Birdsall was actually engaged in a conspiracy to maintain, and was actually in charge of, the premises where intoxicating liquors were being unlawfully sold. Every such place is by the National Prohibition Act declared to be a common nuisance the maintenance of which is punishable by fine, imprisonment or both. Section 21, tit. 2, Act of October 28, 1919 [c. 85], 41 Stat. 305, 314 (U. S. C. tit. 27, § 33 [27 USCA § 33]). The officers were authorized to arrest for crime being committed in their presence, and they lawfully arrested Birdsall. They had a right without a warrant contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise. * * * The authority of officers to search and seize the things by which the nuisance was being maintained extended to all parts of the premises used for the unlawful purpose."

Manifestly, the search and seizure in this case were warranted and reasonable, and not in violation of the rights secured to the defendant by the Fourth Amendment.

It remains to consider the contention of the defendant that there was no evidence that the still was being operated without a permit; that there was no evidence of intent to defraud the United States of the tax on the 30 gallons of spirits; and that there was no evidence that the still was not a registered still. It must first be observed that, while the defendant interposed motion for a directed verdict as to each count of the indictment and specified the grounds of his motion, no mention was made of any of these alleged deficiencies in the evidence. The motions went solely to the question that the evidence "was obtained by the Government agents in violation of the constitutional rights of the defendant." This question was therefore not called to the attention of the trial court, nor to opposing counsel, but is raised for the first time on this appeal. We are inclined to the view that the question was therefore waived, but we prefer not to base our decision on that ground.

It appears from the undisputed evidence that the defendant said at the time of his arrest that he started running the still on the morning of the search and seizure; that he set the mash about two weeks before that time; that the still was his; that nobody else had anything to do with it; and that the owner of the land did not know he was operating a still. The still was found in a lonesome out of the way spot, well removed from any building, and was concealed in a cave. As a matter of law, the still could not have been legally operated without the knowledge and consent of the owner of the land. 26 USCA § 286 (Rev. St. § 3262). This statute, among other things, provides that:

"No bond of a distiller shall be approved, unless he is the owner in fee, unincumbered by any mortgage, judgment, or other lien, of the lot or tract of land on which the distillery is situated, or unless he files with the collector, in connection with his notice, the written consent of the owner of the fee, and of any mortgagee, judgment creditor, or other person having a lien thereon, duly acknowledged, that the premises may be used for the purpose of distilling spirits, subject to the provisions of law, and expressly stipulating that the lien of the United States for taxes and penalties shall have priority of such mortgage, judgment, or other incumbrance, and that in case of the forfeiture of the distillery premises, or of any part thereof, the title of the same shall vest in the United States, discharged from such mortgage, judgment, or other incumbrance," etc.

The proof of these facts and circumstances standing undisputed was sufficient to give rise to the conclusion that the operations of

the defendant were illegal and unauthorized. While we think this evidence standing undisputed was sufficient to prove these negative averments of the indictment, it may be doubted whether under such circumstances it was incumbent upon the government to prove the negative averments of the indictment. In Morris v. United States, 161 F. 672, 677, which was a prosecution for violation of the statute respecting the manufacture and sale of oleomargarine, this court said:

"If the defendant has paid the tax, he can show the fact, not by going upon the stand as a witness and testifying thereto, but by merely exhibiting the receipt, presumptively in his possession. If lost or destroyed, he could show the fact of its issue by the proper book in the collector's office, which was in the building where the court was sitting. It has been the universal rule in the federal courts in proceedings by indictment for failure to pay the revenue tax to the government, authorizing the carrying on of the business by the defendant, for the government to show in the first place that the defendant had engaged in the business at a certain time and place, leaving him to produce his receipt for the tax, if he have one. This rule is expressed in Greenleaf on Evidence, vol. 1, § 79, as follows:

" 'Where the subject-matter of the negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons, except those who are duly licensed therefor; as, for selling liquors, exercising a trade or profession, and the like.'

"Accordingly, it is the recognized rule that 'Licenses are intrinsic matters of defense and must be shown by the party claiming under them.' Wharton, Crim. Evidence (8th Ed.) § 332; State v. Lipscomb, 52 Mo. 33; State v. Hathaway, 115 Mo. 36, 21 S. W. 1081; Blackman v. Commonwealth, 124 Pa. 578, 17 A. 194."

See, also, McCurry v. United States (C. C. A.) 281 F. 532; Goodfriend v. United States (C. C. A.) 294 F. 148; Colasurdo v. United States (C. C. A.) 22 F.(2d) 934; Cardenti v. United States (C. C. A.) 24 F. (2d) 782; Giacolone v. United States (C. C. A.) 13 F.(2d) 108.

■ Neither is there any merit in the contention that there was no proof of an intent to defraud the government of the tax as alleged in count 1 of the indictment. The intent was proven by the circumstantial evidence, a part of which we have recited in this opinion. General Motors Acceptance Corp. v. United States (C. C. A.) 32 F.(2d) 121. We are of the opinion that the evidence abundantly proved the guilt of the defendant beyond a reasonable doubt.

Finding no prejudicial error in the record, the judgment appealed from is affirmed.