**FELIO v. UNITED STATES, and three other cases.**

**Nos. 9206–9209.**

Circuit Court of Appeals, Eighth Circuit.

Jan. 14, 1932.

J. J. Friedman, of Omaha, Neb. (Harry B. Fleharty, of Omaha, Neb., on the brief), for appellants.

Edson Smith, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Lawrence I. Shaw, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

VAN VALKENBURGH, Circuit Judge.

August 30, 1930, appellants in the above-entitled causes were jointly indicted in the District Court for the District of Nebraska for violations of the internal revenue laws (26 USCA §§ 291, 306, 307). The indictment contained six counts. The first count was for the unlawful making of mash fit for the production of alcoholic spirits, said mash not having been made on the premises of a duly authorized distillery; the second, for unlawfully fermenting said mash; the third, for separating alcoholic spirits from a fermented mash; the fourth, for carrying on the business of a distiller with intent to defraud the United States of the tax upon spirits so distilled; the fifth, for using unlawfully and feloniously a still for the purpose of distilling alcoholic spirits from a fermented mash in a barn within the inclosure connected with a dwelling house; and, the sixth, for conspiracy to commit the offenses set out in the preceding five counts, and further to manufacture and possess in said barn and transport therefrom and sell intoxicating liquor that would contain ½ per cent. or more of alcohol by volume, and which would be fit for beverage purposes, without obtaining lawful permit so to do.

On trial, the court directed a verdict of not guilty on count No. 5, and verdicts of guilty were returned as to all defendants upon the remaining five counts. Appellants Felio and Emmie were sentenced to jail for a period of six months upon each of counts 1, 2, 3, 4, and 6, said sentences to run concurrently, and to pay "a fine of $500.00 to cover all counts." Appellants Bruno and Badami received jail sentences of seven months, to run concurrently, and a similar fine of $500. The separate appeals filed are heard upon one transcript.

The farm upon which these distilling operations were conducted was occupied by one Goodhart, who testified that appellant Badami brought the defendant Felio out to his farm in the early part of July, 1930. They asked if Goodhart would rent them the barn. He consented. On a second visit by Badami and Felio, Goodhart was paid $25 for the rent of the barn. Badami was seen there by Goodhart once or twice thereafter. The latter saw Felio and Emmie about the barn on various occasions. August 2, 1930, Prohibition Agents Forsling and Davis, driving along the road near the barn, smelled a strong odor of fermenting mash. About 9 o'clock in the evening of the same day they returned to the neighborhood and again smelled fermenting mash. They remained until about 12:30 a. m., at which time they saw an automobile leaving the premises. On the evening of August 5, 1930, Agents Forsling, Davis, Carpenter, and Wheeler entered a pasture covered with timber directly south of the barn, and took up a position from which, without being observed, they could see what was being done about, and even in the barn. A strong odor of fermenting mash was present. Shortly after their arrival an automobile drove in-

to the yard near the barn, and men were seen unloading jugs and other heavy articles from the car. Later the automobile left with lights turned off, one of the men with it remarking, "Lets get to hell out of here." Forsling later identified this man as Bruno, and the man who handled the jugs as Emmie. The officers continued their vigil until midnight, and at intervals heard men talking and noises like the moving of barrels. Agent Forsling the next day made affidavit setting forth the facts above set forth, and other information gathered, indicating a violation of the internal revenue laws, and a warrant for the search of this barn, among other outbuildings, was issued August 6, 1930, to "Charles H. Davis, federal prohibition agent, and to any other federal prohibition agent authorized by law to act, or to either of them."

August 7, 1930, Prohibition Agent Zersen, with Agents Wheeler, Carpenter, Forsling, and Davis, drove to the barn. He found Goodhart and appellant Felio in the yard south of the barn, "asked them if they were running a still there and Goodhart said the still belonged to Felio and Felio admitted it was his." Felio was placed under arrest, and the officers then seized the still, about 3,800 gallons of mash, and 225 gallons of whisky, all in the barn. Zersen further testifies that he first saw the still and part of the mash when he looked through the open door of the barn from a place a few feet away from the door. The still was then in operation with a coke fire burning. Three of the agents then concealed themselves about the barn and waited. About 9 o'clock p. m. a car drove up to the barn and stopped. It contained Bruno and Emmie, both of whom admitted their connection with the unlawful enterprise. The important features of the foregoing statement of facts were restated and corroborated by the testimony of the other agents whose names have been mentioned.

The points relied upon by appellants in this appeal are, in substance, the following:

(1) The search warrant was invalid because not applied for by or directed to an internal revenue officer, and a search under a warrant issued under the revenue laws cannot properly be issued to a federal prohibition agent. A prohibition officer is not an internal revenue agent.

(2) The evidence was insufficient to warrant conviction.

(3) Judgment on the first, second, third, and fourth counts (substantive offenses) of the indictment being predicated on the same evidence as that introduced under the sixth count (conspiracy) involves the matter of double punishment, and the defendants were entitled to have the government elect whether it would proceed under the substantive counts or under the conspiracy count.

Point 1. The action of the court to which exception is taken under this heading is its denial of the motion of appellants to suppress the evidence procured by the agents at the barn. The search warrant was issued to prohibition agents upon the application of a prohibition agent. Prohibition agents, appointed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, have long been held to be authorized to receive and execute a warrant for violation of the Prohibition Act (27 USCA), issued under the provisions of that act and under those of the Espionage Act (18 USCA § 611 et seq.). Steele v. United States, 267 U. S. 505, 45 S. Ct. 417, 69 L. Ed. 761; Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032.

By the Prohibition Reorganization Act of May 27, 1930 (c. 342, 46 Stat. 427, 27 USCA §§ 101–108) the enforcement of the act was transferred from the Treasury Department to the Department of Justice. The Prohibition Reorganization Act of May 27, 1930, imposes upon the Attorney General the following duties:

"(1) The investigation of violations of this title or any other Act for the enforcement of the eighteenth amendment, and violations of the internal revenue laws if a violation of this title or any other Act for the enforcement of the eighteenth amendment is involved, for the purpose of enforcing the penal provisions of such laws.

"(2) The apprehension and prosecution of offenders against this title or any other Act for the enforcement of the eighteenth amendment, and offenders against the internal revenue laws if a violation of this title or any other Act for the enforcement of the eighteenth amendment is involved.

"(3) The making of all seizures and enforcement of all forfeitures under this title or any other Act for the enforcement of the eighteenth amendment, or under the internal revenue laws if a violation of this title or any other Act for the enforcement of the eighteenth amendment is involved; and the remission or mitigation under section 2709 of Title 26, of any such forfeiture under the internal revenue laws; and * * *

"(4) * * * (d) The Attorney General is authorized to confer or impose any of the rights, privileges, protection, powers and duties conferred or imposed upon him by this chapter upon any of the officers or employees of the Bureau of Prohibition or any other officer or employee of the Department of Justice."

27 USCA § 102 provides:

"(d) Duties of personnel of Bureau of Prohibition. The personnel of the Bureau of Prohibition shall perform such duties, in the District of Columbia or elsewhere, as the Attorney General shall prescribe. (May 27, 1930, c. 342, § 2, 46 Stat. 427)."

And, by general orders under the authority of this statute, the Attorney General has conferred and imposed upon the Director of Prohibition, and upon the officers and employees of the Bureau of Prohibition, including the field service of that Bureau, the following rights, powers, privileges, and duties, among others:

"(1) The investigation of violations of the National Prohibition Act, and violations of the internal revenue laws if a violation of such Act is involved, for the purpose of enforcing the penal provisions of such Act and laws.

"(2) The apprehension and prosecution of offenders against such Act and offenders against the internal revenue laws if a violation of such Act is involved.

"(3) The making of all seizures and enforcement of all forfeitures under such Act, or under the internal revenue laws if a violation of such Act is involved.

"(4) The determination of liability for internal revenue taxes and penalties if a violation of the National Prohibition Act is involved, and the institution of criminal proceedings before United States Commissioners where a violation of such Act is involved."

By the Reorganization Act it was clearly the purpose to confer upon the Attorney General and, by his orders, upon the officers and employees of the Bureau of Prohibition, power to investigate violations, apprehend and prosecute offenders, and make all seizures for the enforcement of the penal provisions not only of the National Prohibition Act, but also of the internal revenue laws, provided that, in matters affecting the internal revenue laws, violations of the National Prohibition Act, or of any other act for the enforcement of the Eighteenth Amendment, is concurrently involved.

Beyond question violations of the National Prohibition Act were involved in those of the internal revenue laws charged in the indictment. It would seem, therefore, that the search warrant was issued under competent authority and was valid. But the competency of the evidence sought to be suppressed does not depend upon the validity of the search warrant. The testimony is that the warrant was not served. The officers were made aware of the commission of a felony upon the premises in question not only by their several senses—alone sufficient to warrant the entrance and search,—but also by the admission of Felio, who was arrested before the search complained of was initiated. In such case the search and seizure was justified without a warrant. Wida v. United States (C. C. A. 8) 52 F.(2d) 424 (opinion filed Sept. 15, 1931); Mulrooney v. United States (C. C. A. 4) 46 F.(2d) 995; Stark v. United States (C. C. A. 8) 44 F.(2d) 946, 948; Gerk v. United States (C. C. A. 8) 33 F.(2d) 485; Weeke v. United States (C. C. A. 8) 14 F.(2d) 398.

Point 2. From the facts stated, the sufficiency of the evidence to support the conviction is apparent.

Point 3. The propriety of joining a conspiracy count with those charging the substantive offense is well settled, and has long been recognized by the courts. Chew v. United States (C. C. A. 8) 9 F.(2d) 348, 352; Perry v. United States (C. C. A. 8) 18 F.(2d) 477; Goukler et al. v. United States (C. C. A. 3) 294 F. 274; Vlassis v. United States (C. C. A. 9) 3 F.(2d) 905; Lewis v. United States (C. C. A. 9) 6 F. (2d) 222; Godsey v. United States (C. C. A. 6) 17 F.(2d) 877; Westfall v. United States (C. C. A. 6) 20 F.(2d) 604; Heike v. United States, 227 U. S. 131, 144, 33 S. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128.

Furthermore there could be no possibility of a double punishment in any event in this case, because the sentences were made to run concurrently. In brief and argument, exception is taken to the testimony of Agents Zersen and Riegal respecting an act of appellant Badami October 2, 1930, nearly two months after the raid in August. The assignments of error are insufficient to present this point for review under rules 11 and 23 of this court. Examination, however, discloses that the court carefully restricted this testimony to appellant Badami alone. It was not introduced for the purpose of establishing the conspiracy nor of binding the oth-

er parties to the transaction. As to Badami, it was competent as tending further to connect him with the unlawful enterprise. We have carefully considered all the points raised by appellants, and find no error.

The judgments accordingly are affirmed.