## UNITED STATES v. HIRSCH et al.

District Court, W. D. New York.
April 2, 1932.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Justin C. Morgan, of Buffalo, N. Y., of counsel), for the United States.

Michael J. Maher, of Buffalo, N. Y., for defendants.

ADLER, District Judge.

This is a motion to set aside a search and seizure, and to suppress evidence. The premises searched are known as the Briggs Brewery and are located in the city of Elmira, N. Y. The raid took place about 1:15 o'clock on the morning of February 1, 1931, and was participated in by eight prohibition agents. It was based upon information obtained by Agent Tobias. He testified that about three days prior to the raid, while in the street adjacent to the brewery he smelled fermenting mash, which odor appeared to him to come from a chimney which was part of the brewery premises. He further stated that he perceived the smell of fermenting mash coming from a manhole in the street located about seventy-five feet from the brewery. There was no evidence at that time that there was any connection between the manhole and the brewery. He said that the same odor of fermenting mash was smelled by him as he went down the street and as far as two blocks away from the brewery. He also saw white smoke hanging over the chimney. He said that he saw two cars come out from a coal yard adjoining the brewery. It does not appear that he knew at this time whether or not the coal yard was connected with the brewery. The following morning, on January 30th, he said he again went to the premises and put his ear up to a crack in the wall of the building when he heard what appeared to be running machinery. This appears to have been his only contact with the building. Such windows and doors as were near the ground were shuttered and he had no view of any part of the interior of the building at any time. On this day and on the following day, which was the day before the raid, he said he smelled fermenting mash in the vicinity of the brewery building and for a distance of three hundred feet from it.

This is the sole evidence on which the prohibition agents forced an entrance into the building, except that two of them testified that when they got close to the building they perceived the odor of fermenting mash. With some difficulty they forced open one of the doors of the building. They found a still in operation and arrested a number of men who were operating the plant.

The question is not presented here as to whether the investigation of the prohibition agent as above stated developed facts which would warrant the issuing of a search warrant. A search warrant was not applied for. The agents forced entrance into the building and arrested the men they found there on the theory that a crime was being committed in their presence. The question here is: Did the condition and circumstances as testified to by Agent Tobias, and the other agents who testified to perceiving the smell of fermenting mash when they got close to the building, justify the assumption that a crime was being committed in the presence of the officers?

A search may be made as an incident of a lawful arrest. The cases cited in support of this proposition have no application here, as in this case the forced entry into the building constituted a search which preceded the arrest. To come within the theory of these cases the arrest must precede the search. The only theory on which forced entrance into this building can be justified is that a crime was being committed in the presence of the officers.

We have here a situation where practically the sole evidence of a crime was furnished to the officers by their sense of smell. There were besides some suspicious circumstances, such as boarding up of doors and windows and smoke coming out of the chimney. The crime which the officers must have perceived the commission of must have been in this case the operation of an illicit still.

556

Can it be said that the odor of distilling mash in the vicinity of a closed building together with some smoke coming from the chimney of the building and some sound which might have come from machinery within the building is sufficient evidence to justify the conclusion that an illicit still was being operated within the building?

The cases of Raniele v. U. S., 34 F.(2d) 877 (C. C. A. 8th) and De Pater v. U. S., 34 F.(2d) 275, 74 A. L. R. 1413 (C. C. A. 4th), are authority for the proposition that such evidence as has been adduced here is not sufficient to authorize the search of premises without a search warrant. These are cases in which a private house was searched, but the language of the court in discussing the principle is broad enough to cover other than residences. Other cases in which it has been held that the sense of smell is not sufficient evidence to warrant a search are: Temperani v. U. S. (C. C. A. 9th) 299 F. 365; Bell v. U. S. (C. C. A. 9th) 9 F.(2d) 820; U. S. v. Di Corvo (D. C. Conn.) 37 F.(2d) 124; Schroeder v. U. S. (C. C. A. 9th) 14 F.(2d) 500; Staker v. U. S. (C. C. A. 6th) 5 F.(2d) 312; Day v. U. S. (C. C. A. 8th) 37 F.(2d) 80; U. S. v. Dean (D. C. Mass.) 50 F.(2d) 906; U. S. v. Tachino, Number 5858 Criminal, oral opinion by Judge Woodrough (D. C. Nebraska).

A reading of the cases leads to the conclusion that the tendency of the courts is to hold that sense of smell must be supported by other concrete facts and circumstances surrounding the situation to justify the conclusion that the crime is being committed. See Felio v. U. S. (C. C. A. 8th) 55 F.(2d) 161, arrest of defendant before search; Wida v. U. S. (C. C. A. 8th) 52 F.(2d) 424 (same facts as above); Taylor v. U. S. (C. C. A. 4th) 55 F.(2d) 59, certiorari granted March 28, 1932, smell and officers saw whiskey cartons through crack in door; Mulrooney v. U. S. (C. C. A. 4th) 46 F.(2d) 995, officers looked through transom, saw barroom; Stark v. U. S. (C. C. A. 8th) 44 F.(2d) 946, 948, arrest of defendant and subsequent admission before search; Gerk v. U. S. (C. C. A. 8th) 33 F.(2d) 485, officers saw defendant in building, near still in operation.

To hold in this case that the search was legal would be practically to hold that the officers could enter any building if they testified that they smelled fermenting mash coming from it, or if they smelled about the building any other odor that is frequently present in the making or possession of intoxicating liquors. I agree with most of the other judges who have written on this subject that the olfactory organs of the average prohibition agent are not sufficiently trained and accurate to be relied upon by the courts without supporting evidence from the other senses. Professor Wigmore, in Principles of Judicial Proof (2d Ed.) §§ 172, 173, comments on the unreliability of the sense of smell as evidence, and after giving some illustrations states this conclusion: "Statements by witnesses concerning perceptions of odor are valueless unless otherwise confirmed."

See, also, U. S. v. Marshall, 1 Cin. Law Bul. 36, 26 Fed. Cas. page 1169, No. 15, 726; Charles C. Moore, Treatise on Facts (1908) vol. 1, chap. VII, §§ 384–392.

I am conscious that in this case, as in many others of this nature that we have to pass upon, the event justified the suspicions of the prohibition agents. It may be that such evidence as they had gathered was sufficient for them to have obtained a search warrant on probable cause. Quandt Brewing Co. v. U. S., 47 F.(2d) 199 (C. C. A. 2nd). In any event, by putting a watch on the place they would certainly have learned things about its use and occupation that would have adequately bolstered up their sense of smell. My conclusion is that on the evidence as it is presented in this case the agents were not justified as a matter of law in breaking into these premises on the theory that a crime was being committed in their presence.

Motion granted.