## UNITED STATES v. TOM YU.

District Court, D. Arizona, Prescott Division.
Sept. 19, 1932.

John C. Gung'l, U. S. Atty., of Tucson, Ariz., and J. S. Wheeler, Asst. U. S. Atty., of Phœnix, Ariz.

John A. McGuire, of Prescott, Ariz., for defendant.

JACOBS, District Judge.

This case comes before the court on a motion to suppress evidence. The facts are as follows:

Narcotic Agent Patterson received information from a Chinaman in California to the effect that smoking opium was being shipped into Arizona to a Chinaman living in the rear of 136 South Granite street, Prescott, Ariz., and being there distributed. The information was purely hearsay, and the

narcotic agent had no personal knowledge of any of these facts. Acting upon this hearsay information, Narcotic Agents Patterson and Berry and a deputy sheriff named Kent went to the residence of the defendant, Tom Yu, between 9 and 10 o'clock on the night of June 9th, claimed to smell the fumes of smoking opium, broke in the door, finding no one there. Agent Patterson testified that he found some opium pipes still warm and a lamp used for lighting pipes. No search was made, and the officers retired from the premises. Thereafter, about 1 o'clock on the morning of June 10th the officers again approached the building and claimed to smell the fumes of smoking opium, immediately broke in the door and proceeded to search the premises and arrest the defendant. They found and seized one ounce and one hundred fifty-two grains of smoking opium, and a little more than one ounce of yen shee. The defendant testified that the building was his residence, which was not contradicted. On June 18, 1932, an indictment was returned by the grand jury charging that the defendant, Tom Yu, on the 10th day of June, 1932, did knowingly and fraudulently import and bring into the United States, and assist in so doing, the said smoking opium and yen shee. The second count charged that the defendant on the same date did knowingly and fraudulently receive, conceal, and facilitate the transportation and concealment of said drug after the unlawful importation thereof. knowing the same to have been unlawfully imported.

The defendant, through his attorney, filed a timely motion to suppress the evidence on the ground that the search and seizure was unlawful, without probable cause and in violation of the Fourth and Fifth Amendments to the Constitution of the United States.

The charge contained in the indictment is based on section 174 of title 21, USCA, which reads as follows: "If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Section 181, title 21, USCA, provides: "All smoking opium or opium prepared for smoking found within the United States shall be presumed to have been imported contrary to law, and the burden of proof shall be on the claimant or the accused to rebut such presumption."

The presumptions contained in sections 174 and 181, title 21, USCA, are, "but what are commonly styled rules of evidence and not substantive law creating offenses." U. S. v. Yee Fing (D. C.) 222 F. 154, 155.

On the hearing of the motion to suppress, the government contended that the fact that the narcotic agents had been told that drugs had been shipped to this residence and were there being distributed, and that upon approaching the building they smelled the fumes of what they considered smoking opium, that a crime was being committed in their presence which justified them in forcing an entry into the premises and arresting the person or persons smoking the opium.

It was admitted at the hearing that the officers had no search warrant for these premises, and that they had made no effort, although having ample time and opportunity between the hours of 10 o'clock on the night of June 9th and 1 o'clock on the morning of June 10th to obtain one if the facts within their knowledge justified its issuance.

It is well settled that "as to private residences, no search can ever be justified under the federal laws without a warrant." U. S. v. Rembert (D. C.) 284 F. 996, 1006.

The exception to this rule is where a crime is being committed in the presence of the officer, when he is justified in making an arrest without a warrant and a search incidental to the arrest. Wida et al. v. U. S. (C. C. A.) 52 F.(2d) 424; McBride v. U. S. (C. C. A.) 284 F. 416–419.

It has been held repeatedly that "belief, however well founded, that article sought is concealed in dwelling, is no justification for search without warrant, notwithstanding facts unquestionably show probable cause." Bell v. U. S. (C. C. A.) 9 F.(2d) 820; Angello et al. v. U. S., 269 U. S. 20, 46 S. Ct.

4, 70 L. Ed. 145, 51 A. L. R. 409; Temperani v. U. S. (C. C. A.) 299 F. 365.

The important question to determine is whether the information conveyed to the officers and the fact that they smelled the fumes of smoking opium was sufficient to justify an honest belief that a crime was being committed in their presence. The search of the defendant's dwelling without a warrant was unlawful unless it can be said that a crime was being committed in their presence.

It is interesting to note that Congress has no power to prohibit the manufacture or the smoking of opium within the states, as these matters are wholly within the police regulations of the states.

By section 721, title 26, USCA, Congress recognizes the lawfulness of the manufacture of smoking opium within the states, and levies a tax thereon. By section 722 of the same title, the manufacturer of opium suitable for smoking is required to file with the collector of internal revenue a notice, inventory, and bond.

Section 723, title 26, provides: "All opium prepared for smoking manufactured in the United States shall be duly stamped in such a permanent manner as to denote the payment of the internal-revenue tax thereon."

Section 725, same title, provides for a penalty and the forfeiture of all such opium found in the United States without the stamp, required by section 723.

Section 174, title 21, USCA, makes it a crime for a person knowingly to import or bring any narcotic drug into the United States, contrary to law, or to receive, conceal, buy, sell, or facilitate the transportation, concealment, or sale of any such drug after having been imported or brought in, knowing the same to have been imported contrary to law.

In construing this section, it has been held that knowledge of the unlawful importation of the drug is an essential element of the crime. Kalos v. U. S. (C. C. A.) 9 F. (2d) 268. It will thus be seen that the manufacture of smoking opium within the United States, subject to these restrictions and those which may be prescribed by the states, is lawful.

It may be, as stated in United States v. Yee Fing, supra, that "opium is not commercially a domestic product"; yet the fact remains that it may be, and no doubt is, manufactured and distributed in the United States.

The presumption contained in section 174 cannot aid the officers in this case in believing that a crime was being committed in their presence, as it does not obtain until the defendant is placed on trial and proof is made by the government of the possession of the drug by the defendant. The presumption contained in section 181, title 21, USCA, does not apply until the opium prepared for smoking is "found within the United States." The finding of the odor outside of the dwelling is not the finding of the opium within the dwelling. The most that can be said is, it is the finding of a fact that may lead to the finding of opium.

In the case of Taylor v. U. S., 286 U. S. 1, 52 S. Ct. 466, 467, 76 L. Ed. 951, a case involving the legality of a search by prohibition agents, the Supreme Court says: "Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guaranties * * * against unreasonable search."

The only case that has been called to my attention which holds that the odor of opium is evidence of the commission of a crime, is that of U. S. v. Boyd (D. C.) 1 F.(2d) 1019, 1020. All that the court says on the subject in that case is, "The odor of opium being detected was evidence that the Anti-Narcotic Act [26 USCA §§ 211, 691 et seq.] was being violated." The decision is no doubt based on the presumption that is found in section 181, title 21, USCA, but, as stated before, this presumption merely fixes the burden of proof and applies only at the trial of the case, or after the opium is found.

How these narcotic agents could, from the fumes of smoking opium, distinguish between domestic and imported opium, or determine that the person smoking the opium knew it had been unlawfully imported into the United States, is a mystery.

I am aware of a group of decisions which hold that the odor of fermenting mash emanating from a building is sufficient to justify an officer in the belief that a crime is being committed in his presence, but such crimes as are defined in section 174, title 21, USCA, where the defendant may have possession of an article and still not be guilty thereof, because of its undetermined character, as to whether or not it is contraband,

or have no knowledge of its character as such, should come within a different category, and a person should not be subjected to the indignity and humiliation of an arrest and search of his premises on a suspicion of the facts.

"No officer has the right, upon mere suspicion, to search the premises of any person for the evidence of the commission of any crime." U. S. v. Rembert (D. C.) 284 F. 996, 1000.

In the case of Byars v. U. S., 273 U. S. 32, 47 S. Ct. 248, 249, 71 L. Ed. 520, it is said: "Constitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' Boyd v. U. S., 116 U. S. 616, 635, 6 S. Ct. 524, 535, 29 L. Ed. 746." See, also, Gouled v. U. S., 255 U. S. at page 305, 41 S. Ct. 261, 65 L. Ed. 647.

Regardless of how desirable or necessary it may be to suppress the traffic in narcotic drugs, yet well-founded principles of law cannot be ignored, nor constitutional guaranties disregarded to accomplish the purpose.

From the evidence in this case and the law as I construe it, I am of the opinion that the facts within the knowledge of these officers, at the time of the forced entry into the defendant's dwelling, was not sufficient to justify an honest belief that a crime was being committed in their presence. They cannot reasonably presume that the persons within the dwelling had knowingly imported or brought into the United States any narcotic drug, or assisted therein, or that they received or concealed or facilitated the transportation or concealment of such drug, knowing the same to have been imported contrary to law; that the entry of defendant's dwelling without a warrant and the search of the premises was illegal.

Motion to suppress is granted.