**UNITED STATES v. SHULTZ.**

**SAME v. MENDOZA.**

**SAME v. McGUIRE.**

**SAME v. BURNS et al.**

**SAME v. MILLS et al.**

Nos. C–6512, C–6469, C–6518, C–6494, C–6489.

District Court, D. Arizona.

April 11, 1933.

John C. Gung'l, U. S. Atty., and Clarence V. Perrin and R. C. Parnell, Asst. U. S. Attys., all of Tucson, Ariz.

Frank E. Thomas, of Bisbee, Ariz., for defendants Shultz and Mendoza.

Harry O. Juliani, of Tucson, Ariz., for defendant McGuire.

John L. Van Buskirk, of Tucson, Ariz., for defendants Burns and another.

E. T. Cusick, of Tucson, Ariz., for defendants Mills and others.

SAMES, District Judge.

In each of these cases the prohibition officers, without permission and without search warrants, entered private dwellings and seized apparatus and materials for the distillation of alcoholic liquors.

In the Shultz case, the officers, while on a public street and on a vacant lot, detected odors of mash from the defendant's premises. After he entered his basement, the odor became more pronounced, and to quote one of the officers: "We decided to go in and find out if there was not a violation of the law there, and so we went in, and this mash was on the floor." Mr. Shultz was placed under arrest.

In the Mendoza case, the officers detected the odor of distilling mash a hundred yards from the house and before entering the premises. They went through the front gate to the front porch and talked with defendant's fifteen year old son, who told them his father was not at home. Two of the officers walked around to the rear and, looking through an opening or window of a concrete wall built into the mountain at the rear of the house, saw a still in operation. The officers then placed the boy under arrest and entered the house and seized the still and whisky in the concrete room at the rear. The defendant was not at home and was not arrested, but was told to report to the United States Commissioner at Bisbee.

In the McGuire case, the officers had information that a still would be operated the next day on defendant's premises, consisting of a house and garage on two fenced lots, near the Veterans' Hospital in Tucson. Before going on the premises and just outside

of the fence, and within ten feet of the garage, the officers smelled fermenting mash and heard the sound of burners in defendant's garage. Defendant was in the yard twenty-six feet from the gate. The officers entered on the premises and arrested the defendant and obtained the keys to the garage from him and entered the garage and found a still set up and in operation.

In the Burns case, the officers watched the defendants Burns, Evans, and Randall at Evans' place on Sixth street in Tucson for about an hour. They saw a small truck drive up on which Evans loaded a package "similar to a paper package containing a gallon of whisky," and the truck drove away. Evans, Burns, and Randall loaded a few packages and what appeared to be a five-gallon keg into a sedan, and drove out to premises on Grant Road which Burns had leased from Evans, and where Burns was residing. The officers followed in their car to the rear of a house about fifty yards west of the Burns place, where they watched the movements of the defendants, and saw Burns or Randall look down at their car and then at the officers. The latter walked up to the fence, opened the gate, and entered the premises. The officers detected the odor of fermenting mash as they drove into the yard. Officer Brown was in charge of the party, and said he intended to make an investigation. He had heard there was a still in the basement. One of the officers told Evans they had come to tear up the liquor outfit, while another officer who saw a five-gallon whisky keg on the back porch went down into the cellar and found a still, mash, whisky, and a ladder leading up to the floor above, and half a sack of bran. Brown testified that Evans asked to be allowed to dispose of the stuff and that he would make it right. Burns said he owned the whisky outfit and the sedan in which the defendants rode out to his place. It is not clear from the testimony just when the arrests were made, but Burns and Randall were arrested inside the house, and Evans in the yard.

In the Mills case, defendants Mills and Williams were residing in a farm house about the center of a fenced 640-acre tract of land west of Tucson. The officers went out on the Casa Grande road and around the tract to a lane one-half mile west of the house, opened a gate, and proceeded down the lane on the land a half mile to another inclosure, which they entered through a gate, and went up to the fence and gate of the inclosure of the dwelling on the land. Before entering through the last gate, they detected the odor

of mash, and thereupon one of the officers arrested Williams and another ran up and arrested Mills on the porch of the house. Mills asked the officers if they had a search warrant, to which they replied that they had not but were going to search the premises anyway. It is stipulated that Mills will testify that the dwelling is the home of him and Williams; that he had a lease of the premises; that he had been taking care of the stock thereon; and that he alone owned the still outfit, and that the other defendants had nothing to do with it. In one corner of the house the officers found a 125-gallon still set up, mash, whisky ager, and a thumper keg. About fifteen minutes later Loyd drove up, having two empty kegs in his car; and about fifteen minutes thereafter, defendant Currier arrived in a Buick car carrying sugar, bran, yeast, and sal soda, and was placed under arrest. Loyd claimed to own the still, and stated that he had the still at the rock house about five miles away, and got away ahead of the officers, and had cut the still down.

27 USCA § 39 is as follows: " * * * No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house. * * * "

The search of any private dwelling, as defined in said title 27, without a warrant directing the same, is a misdemeanor. 18 USCA § 53.

Property used as a means of committing a felony may be taken on a search warrant from any house or other place in which it is concealed, and from the possession of the person by whom it was used in the commission of any offense. 18 USCA § 612, par. 2.

Distillers are required to furnish collectors of internal revenue keys to their distilleries (26 USCA § 298), and a revenue officer may enter at any time, any distillery, to examine, gauge, measure, etc., stills, vessels, and materials for making and distilling spirits therein (26 USCA § 299).

In U. S. v. Apple (D. C.) 1 F.(2d) 493, and U. S. v. Lorenz (D. C.) 17 F.(2d) 829, dwellings in which stills were operated, were held subject to entry and inspection by the federal officers without a search warrant notwithstanding the Fourth and Fifth Amendments to the Constitution. The Ninth Circuit Court of Appeals, however, in Donahue v. U. S., 56 F.(2d) 94, states that the theory advanced in U. S. v. Apple, supra, that the major use of a dwelling house for the manufacture of illegal liquor converts the dwelling into a distillery or place of business within the meaning of the statute (27 USCA § 39), is universally repudiated, citing U. S. v. A Certain Distillery (D. C.) 24 F.(2d) 557.

A summary of the law of arrest, search, and seizure without a warrant in a federal case appears in the decision in U. S. v. Rembert (D. C.) 284 F. 996, 1006, cited with approval in Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 6, 70 L. Ed. 145, 51 A. L. R. 409, from which the following is quoted:

"(1) That no general exploratory search and seizure of either persons, houses, or effects can ever be justified, either with or without a warrant.

"(2) As to private residences, no search can ever be justified, under the federal laws without a warrant.

"(3) The provision against unreasonable searches and seizures, being directed to prevent general exploratory writs and investigations of the homes of persons and the property of the citizen, has no application to and does not prevent the arrest in accordance with the course of common law, and of the statutes directing the same without a warrant, and wherever a felony has been committed, either in the presence of the officer or as to which the officer has a belief induced by reasonable grounds, or a misdemeanor has been committed in the presence of the officer, that is, of which the officer has evidence by his senses sufficient to induce a belief in him based upon reasonable grounds of belief, an arrest may be made without a warrant, and the instruments and evidence of crime seized."

No search warrant having issued, and the right of entry of a private dwelling for inspection as a distillery being denied, as stated in Donahue v. U. S., supra, the action of the officers in entering upon and searching the premises involved in these motions was unwarranted and illegal, unless the search was incident to and followed a lawful arrest for an offense committed in the presence of the officers, or of which the officers had a belief induced by reasonable grounds. U. S. v. Rembert, supra; Donahue v. U. S., supra. "Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. * * * Belief, however well founded, that an article sought is concealed in a dwelling

house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause." Agnello v. U. S., supra. See Temperani v. U. S. (C. C. A.) 299 F. 365, 367; U. S. v. Tom Yu (D. C.) 1 F. Supp. 357.

That the searches involved in these motions were of private dwellings and not business or public premises, or of automobiles, is to be kept in mind.

Congress, in the prohibition legislation, intended to make a distinction between the necessity for a search warrant for private dwellings and for searching automobiles, vessels, and other vehicles. Carroll v. U. S., 267 U. S. 132, 147, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790.

Arrests and searches without a warrant have been upheld in a number of cases where the officer was apprised by his sense of smell that a crime was being committed in his presence. Wida v. U. S. (C. C. A.) 52 F.(2d) 424; McBride v. U. S. (C. C. A.) 284 F. 416; Garske v. U. S. (C. C. A.) 1 F.(2d) 620; Lee Kwong Nom v. U. S. (C. C. A.) 20 F.(2d) 470; Felio v. U. S. (C. C. A.) 55 F.(2d) 161. In Wida v. U. S., the officers had information that liquor was being distilled at the farm house of the defendant where they went to investigate. As they approached the house, they smelled the odor of mash. They went to the door where Wida appeared, and upon identifying him, the officers arrested him for having mash in his possession. He was then asked where the still was, and he said it was in the basement and that he had been operating it. This case holds the odor of mash sufficient to justify an arrest on the theory of an offense committed in the presence of the officers, citing McBride v. U. S., supra; Garske Case, supra, and Lee Kwong Nom Case, supra. In the cases cited, however, and in Gerk v. U. S. (C. C. A.) 33 F.(2d) 485, the arrest was not made in and the search was not made of a private dwelling.

Such evidence was held insufficient in Raniele v. U. S. (C. C. A.) 34 F.(2d) 877, and DePater v. U. S. (C. C. A.) 34 F.(2d) 275, 74 A. L. R. 1413, in which private houses were searched. Other cases holding that the sense of smell is not sufficient evidence to warrant a search without a warrant are: U. S. v. Hirsch (D. C.) 57 F.(2d) 555, 556; Temperani v. U. S., supra; Bell v. U. S. (C. C. A.) 9 F.(2d) 820; U. S. v. DiCorvo (D. C.) 37 F.(2d) 124; Schroeder v. U. S. (C. C. A.) 14 F.(2d) 500; Staker v. U. S. (C. C. A.) 5 F.(2d) 312; Day v. U. S. (C. C. A.) 37 F.(2d) 80, and U. S. v. Dean (D. C.) 50 F.(2d) 905, 906.

The sense of smell must be supported by other concrete facts and circumstances surrounding the situation to justify the conclusion that the crime is being committed. U. S. v. Hirsch, supra.

In the late case of Taylor v. U. S., 286 U. S. 1, 52 S. Ct. 466, 467, 76 L. Ed. 951, involving the legality of a search without a warrant of a garage on residence premises, concerning which the officers had had information of its illicit use for about a year, and saw through an opening what appeared to be cardboard cases containing liquor, the Supreme Court, in holding the search unreasonable, says: "Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guaranties * * * against unreasonable search."

In Raniele v. United States (C. C. A.) 34 F.(2d) 877, 879, the charge was possession of an unregistered still. The officers were informed that there was a still in a house. On entering the yard, and within thirty or forty feet of the house, they smelled an odor recognized as that of fermenting mash. As they approached the house, the odor became stronger. They went to the back door and rapped. Defendant's wife came to the door. One of the officers told her he was a federal officer, and asked where her husband was. She said in the basement. He asked how to get down and she pointed the way. He went downstairs to the basement. When he reached the foot of the stairs he saw a small room and an open wide doorway leading into a larger room, where he saw two stills in operation, and apparatus and mash, and defendant and four other men standing by the doorway. He asked who was boss of the place, and defendant said he was. The arrest and seizure followed. The government's position, as stated in its brief, was: "The Government agent had direct personal knowledge through his sense of smell before entering the house that a crime was being committed." The court says:

"If this was the crime, the evidence of which came to the prohibition agent as he approached the premises, what was that evidence? The odor of fermenting mash. The prohibition agent testified that he was experienced in the smell of fermenting mash; that it was peculiar and could not be mistaken for some other odor. Conceding that this

is true, in spite of our very grave doubts on the subject, yet the knowledge of the prohibition agent of the crime being committed in his presence is not made out, and for two reasons: First, the smell did not give the prohibition agent knowledge that any person was in the house or had possession or control of the fermenting mash. If the prohibition agent had entered the house and found no person there, but had seized the still, and the next day had found the owner of the house in town and had arrested him, it could hardly be claimed that the search and seizure were lawful, and that the evidence thus obtained was admissible against the owner. The fact that the prohibition agent happened to find the owner in the house does not alter the case. After-acquired knowledge could not legalize a search unlawful when made.

"There is a second reason why the prohibition agent did not have knowledge through his sense of smell that the crime in question was being committed in his presence. Let it be granted for the sake of argument that the sense of smell gave the prohibition agent knowledge that there was fermenting mash in the house. This was not knowledge that there was a still in the house; much less that the still was unregistered. There was no evidence to show, and it is not claimed, that the smell of fermenting mash from an unregistered still is any different from the smell of fermenting mash from a registered still, from an ordinary cauldron, or from a kitchen stewpan.

"The truth of the whole matter seems to be that the prohibition agent detected a smell coming from the residence, which he assumed or inferred was the smell of fermenting mash; he assumed further that some person was in the house in possession of a still containing the mash; he assumed further that the still was unregistered. This series of assumptions would not be admissible evidence in court to prove that a crime was being committed; neither did it constitute knowledge in any true sense of the word on the part of the prohibition agent that the crime for which defendant was afterward indicted was being committed in his presence.

"But, passing by this lack of knowledge and lack of evidence that a crime was being committed in the presence of the prohibition agent, and assuming that his knowledge was such that he was authorized to enter the house and to make an arrest, and, as incidental to the arrest, was further authorized to make a search, this was not what he did. On entering the house he found a female of adult age, who said she was the woman of

the house. No arrest was then made, but the prohibition agent proceeded to search the house by going to the basement, where he found the stills and other apparatus, together with the mash and moonshine. Thereupon he arrested the defendant. In other words, the arrest was incidental and subsequent to the search, instead of the search being incidental to the arrest. That the search and seizure under such circumstances and without a warrant was illegal, we think requires no argument."

And in U. S. v. Hirsch et al., supra, decided a year ago, not a residence case, the court says: "To hold in this case that the search was legal would be practically to hold that the officers could enter any building if they testified that they smelled fermenting mash coming from it, or if they smelled about the building any other odor that is frequently present in the making or possession of intoxicating liquors. I agree with most of the other judges who have written on this subject that the olfactory organs of the average prohibition agent are not sufficiently trained and accurate to be relied upon by the courts without supporting evidence from the other senses. Professor Wigmore, in Principles of Judicial Proof (2d Ed.) §§ 172, 173, comments on the unreliability of the sense of smell as evidence, and after giving some illustrations states this conclusion: 'Statements by witnesses concerning perceptions of odor are valueless unless otherwise confirmed.'"

Quoting further from the same case: "I am conscious that in this case, as in many others of this nature that we have to pass upon, the event justified the suspicions of the prohibition agents. It may be that such evidence as they had gathered was sufficient for them to have obtained a search warrant on probable cause. * * * In any event, by putting a watch on the place they would certainly have learned things about its use and occupation that would have adequately bolstered up their sense of smell. My conclusion is that on the evidence as it is presented in this case the agents were not justified as a matter of law in breaking into these premises on the theory that a crime was being committed in their presence."

A search may be made as an incident of a lawful arrest. To come within the theory of an offense committed in the presence of the officers, the arrest must precede any search, Taylor v. U. S., supra; U. S. v. Hirsch, supra; DePater v. U. S., supra, and the offense is not committed in the presence of the officers if the offender is not present

when the search is made, Taylor v. U. S., supra; Staker v. U. S. (C. C. A.) 5 F.(2d) 312; Amos v. U. S., 255 U. S. 313, 315, 41 S. Ct. 266, 65 L. Ed. 654; Bell v. U. S. (C. C. A.) 9 F.(2d) 820. In Temperani v. U. S., cited with approval in Agnello v. U. S., supra, prohibition officers detected an odor of mash emanating from the garage beneath a certain dwelling. They forced an entry and discovered stills in operation and liquor and mash, but the defendant was not there. In holding the search illegal, Judge Rudkin said: "But here the offender was not in the presence of the officers; he was not in the garage, and they had no reason to suspect that he was there. Laying all pretense aside, the officers entered the garage, not to apprehend an offender for committing an offense within their presence, but to make a search of the premises to obtain tangible evidence to go before a jury, and whatever necessity may exist for enforcing the National Prohibition Act, * * * or other laws, the violation of rights guaranteed by the Constitution cannot be tolerated or condoned."

■■ The officers had received information of illicit use of the premises involved in most, if not all, of these cases. Unless such information was based on personal observations or perceptions, such information was purely hearsay. U. S. v. Tom Yu (D. C.) 1 F. Supp. 357. And an arrest may not be made on mere suspicion. Garske v. U. S. (C. C. A.) 1 F.(2d) 620.

In each of these cases, as pointed out in Taylor v. U. S., supra, U. S. v. Hirsch, supra, and in U. S. v. Tom Yu, supra, ample time was afforded to apply for and obtain a search warrant. Haste of the officers, as in case of an automobile, as pointed out by Judge Taft in Carroll v. U. S., supra, was not imperative.

Judge Mack, in Staker v. U. S. (C. C. A.) 5 F.(2d) 312, 314, says: "The officers had no probable cause to believe from the smell alone that the dwelling house was being used for sales. The situation did not justify a search without a warrant. The policy of the statute goes far to restrict the right of searching a dwelling even with a warrant. Such policy cannot be frittered away by granting a broader right of search without a warrant."

■■ An unlawful search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. U. S. v. 2 Soaking Units (D. C.) 44 F.(2d) 650; U. S. v. Rembert, supra; U.

S. v. Slusser (D. C.) 270 F. 818; U. S. v. DiCorvo, supra.

An examination of the many cases discloses that the decisions are not in harmony, and are based on varying facts and circumstances.

■ It seems to me, however, that under the constitutional guaranty that persons, their houses, papers, and effects shall be secure from unreasonable seizure, and that no warrants shall issue but upon probable cause, on oath, and under the statutory restrictions against the entry of private dwellings on a warrant, an arrest and search of such premises on belief occasioned merely by the sense of smell, on or off of the premises, of fermenting distilling mash thereon, is unreasonable and unjustifiable.

■ That to warrant an arrest, to which the search may be incident, for an offense committed in the presence of the officer, or of which the officer has a belief based on reasonable grounds, if the sense of smell be relied upon as inducing such belief, it must be supported by other concrete facts and circumstances surrounding the situation, within the knowledge of the arresting officer or officers at the time of such arrest.

Unlike the Wida Case, supra, no admissions were made by the movants in either of these cases before the search, and no permission was given to make the search.

■ In the Shultz case, the only indication of the commission of an offense in the presence of the officers was the odor of mash. Officer Brown said the officers followed Shultz into the basement of his home to find out if there was not a violation of law there.

■ In the Mendoza case, a search preceded the arrest. After talking to the defendant's son on the front porch, two of the officers went to the passageway at the rear of the house and saw through the window in the concrete wall built back into the mountain, a still in operation, and then returned and arrested the boy. The father was not on the premises and was not arrested.

■ In the McGuire case, the officers, while outside of defendant's fenced lot, but within ten feet of the garage, got the odor of fermenting mash and heard the noise of the burners, in the garage. The defendant was in their presence on the lot, about thirty-five feet from the garage. The officers entered the premises, arrested the defendant, and from him obtained the keys, entered the garage, and found a still in operation.

■ In the Burns case, the movements of the defendants at the Evans place in town, excited the suspicions of the officers, who followed the defendants' car in which had been placed what appeared to be a five-gallon keg and packages in paper bags, to the Burns place. After watching the movements of the defendants from a point about fifty yards west, the officers opened the gate and drove into the yard, when the odor of the mash was first detected. No other indications of a still on the premises before the officers entered or made the search is disclosed.

■ In the Mills case, the question of whether the entry upon land, a part of the curtilage, or upon open field, as in Hester v. U. S., 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898, need not be determined. The officers entered fenced premises and had opened the gates and entered two inclosures approaching defendant's dwelling, and were at the inner yard gate before the odor of mash was detected. No other evidence of the commission of a crime on the premises in the presence of the officers is shown at the time of the arrest of Williams and Mills.

The motion of the movant Theodore Shultz, in cause No. C–6512, United States of America v. Theodore Shultz; of the movant Santiago Mendoza, in cause No. C–6469, United States of America v. Sandiago Mendoza; of the movant Edward Burns, in cause No. C–6494, United States of America v. Edward Burns et al.; and the movant Jack Mills, in cause No. C–6489, United States of America v. Jack Mills et al.—are each granted.

The motion of the movant James C. McGuire, in cause No. C–6518, United States of America v. James C. McGuire, is denied.